Karen Renee AUGUSTUS, a Minor, by
Charles A. Augustus, her father and
next friend, et al., Plaintiffs,

v.

BOARD OF PUBLIC INSTRUCTION OF
ESCAMBIA COUNTY, FLORIDA, a
Public Body Corporate, et al., Defend-
ants.

Civ. A. No. 1064.

United States District Court
N. D. Florida,
Pensacola Division.

June 24, 1960.

Charles Wilson, Pensacola, Fla., Con-
stance Baker Motley, Thurgood Mar-
shall, New York City, for plaintiffs.

Bert Lane, Pensacola, Fla., J. E. Hols-
berry, William Fisher, Sr., Pensacola,
Fla., for defendants.

CARSWELL, Chief Judge.

Before the Court is Motion of defend-
ant Board of Public Instruction of
Escambia County, Florida, to strike cer-

tain portions of complaint filed by plaintiffs, as a class action invoking the provisions of Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and its progeny.

The attack here by the Board was originally twofold, the first being a Motion to Dismiss on the grounds that the complaint showed that plaintiffs had not exhausted their administrative remedies available to them under Florida's Pupil Assignment law. F.S.A. § 230.232.

In view of the holding of the Fifth Circuit in Mannings v. Board of Public Instruction of Hillsborough County, Florida, 277 F.2d 370, defendant here recognizes that its motion to dismiss is untenable in this Court and withdraws it, with preservation in the record of its contention in that regard, alleging inconsistency between the Fifth Circuit in Manning, supra, and the Fourth Circuit in Holt v. Raleigh City Board of Education, N.C., 265 F.2d 95.

The remaining Motion to Strike is directed to the portion of the complaint which seeks Court control by injunction or decree of the assignment of teachers, principals and other school personnel.

In paragraph nine of the complaint plaintiffs allege:

"Plaintiffs, and the members of the class which they represent, are injured by the operation of a biracial school system for the Negro and white children of Escambia County. The biracial school system is predicated on the theory that Negroes are inherently inferior to white persons and, consequently, may not attend the same public schools attended by white children who are superior. The plaintiffs, and members of their class, are injured by the policy of assigning teachers, principals and other school personnel on the basis of the race and color of the children attending a particular school and the race and color of the person to be assigned. Assignment of school personnel on the basis of race and color is also predicated on the theory that Negro teachers, Negro principals and other Negro school personnel are inferior to white teachers, white principals and other white school personnel and, therefore, may not teach white children.

"The injury which plaintiffs and members of their class suffer as a result of the operation of the biracial school system in Escambia County and as a result of the policy of assigning school personnel on the basis of race is irreparable and will continue until enjoined by this court. * * * *"

In their prayer for relief, plaintiffs, *inter alia*, seek a decree enjoining defendants, their agents, employees and successors from assigning teachers, principals and other school personnel to the schools of Escambia County on the basis of race and color of the children attending the school to which the personnel is to be assigned.

The defendants move to strike these portions of the complaint, and others of same context, on several grounds, one being that plaintiffs do not have the right to bring such class action in their own behalf affecting the constitutional rights, if any, of others.

To this plaintiffs argue that such action is supportable under one or the other following precepts: (1) the children themselves have the right to attend a school *system* where *no decision* of the school board is based on consideration of race, or (2) there is such community of interest between students and teachers as to give the students the right to bring a class action for teachers not a party herein.

Concerning the first of these contentions plaintiffs say that the Supreme Court has established their right to attend school in a nonracial school *system*, including, among other things, the assignment of teachers, principals, and other school personnel, quoting, as authority the following language of the first Brown case, supra [347 U.S. 483, 74 S. Ct. 690]:

"Here, unlike Sweatt v. Painter [339 U.S. 629, 70 S.Ct. 848, 94 L. Ed. 1114], there are findings below that the Negro and white schools involved have been equalized, or are being equalized, with respect to buildings, curricula, qualifications and salaries of teachers, and other 'tangible' factors. Our decision, therefore, cannot turn on merely a comparison of these tangible factors in the Negro and white schools involved in each of the cases. We must look instead to the effect of segregation itself on public education."

And also, from the second Brown case, 349 U.S. 294, 75 S.Ct. 753, 756, 99 L.Ed. 1083:

"*Once such a start* has been made, the courts may find that *additional time* is necessary to carry out the *ruling* in an effective manner. The burden rests upon the defendants to establish that such *time* is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. *To that end*, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel * * *. They will also consider the adequacy of any plans the defendants may propose to meet these problems and to effectuate a transition to a racially *nondiscriminatory school system*. During this period of transition, the courts will retain jurisdiction of these cases." (Emphasis added.)

Likewise, plaintiffs say, similar language using the words "school system" in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19, is also authority.

Plaintiffs further state that the Fifth Circuit made it "abundantly clear" that desegregation of the public schools involves desegregation of the teachers in Gibson v. Board of Public Instruction of Dade County, Florida, 272 F.2d 763, 766, wherein it was said:

"At the time of trial, in the Fall of 1958, complete actual segregation of the races, both as to teachers and as to pupils, still prevailed in the public schools of the County."

These specific quotations from the cases cited mean to the plaintiffs that the use of the words "teachers" and "school system" makes it clear that the original school segregation cases involve the whole public school system and that it was the intention of the Supreme Court in those cases to eliminate segregation therein in all particulars and not merely to permit the individual pupil admission to a public school without considerations of race.

Although the complaint is not in language seeking rights in behalf of teachers, principals or other school personnel, plaintiffs argue that the Brown cases decided by inference that assignment of school personnel, teachers and principals to schools on the basis of race or color is a violation of those persons' constitutional rights under the equal protection clauses of the constitution.

No such inferences can be supported by these or any of the other cases called to the attention of the court. The Brown cases hold that the segregation of white and Negro *children* on the basis of race denies to Negro children equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution. The Brown case, 347 U.S. 483, at page 487, 74 S.Ct. 686, at page 688, specifically states that the " * * * minors of the Negro Race * * * seek the aid of the courts in obtaining *admission* to the public schools of their community on a nonsegregated basis." (Emphasis supplied). At page 488 of 347 U.S., at page 688 of 74 S.Ct. "In each instance, they had been denied admission to schools attended by white children * * *." The Supreme Court held that the doctrine of separate but equal facilities was no longer a valid basis for keeping the races segregated, and rejected the language of Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, as applicable to public education. These holdings, however, can not

be extended as applicable to any other parties than those to the suit and those represented by the parties to the suit who were similarly situated.

The quotation beginning, "Once such a start has been made * * *" from the second Brown case deals with the question of time. The district court may find that additional time is necessary to carry out the "ruling". Since this ruling concerned the admission of students, the quotation beginning with "To that end * * *" refers to the factors which may affect the *length of time* given to the school boards by the district court if such additional time is shown by the school boards to be necessary, to give effect to the Supreme Court's decision.

Even a perfunctory reading of the Gibson case, supra, shows that the holding did not purport to affect the assignment of teachers in any way. The quoted portion of the case was merely a statement of fact. That action was brought by Negro children on behalf of other Negro children similarly situated, and on denial of the lower court to grant relief after it found certain portions of the Florida Constitution and statutes to be violative of the Fourteenth Amendment, the plaintiffs appealed. The Fifth Circuit held that the district court should have retained jurisdiction and should review plans for desegregation promulgated by the school board in accordance with the Brown decisions. It also reiterated its holding on a prior case, 5 Cir., 246 F.2d 913, 914, involving the same parties with respect to the Florida Pupil Assignment Law.

■ Plaintiffs admit that the Supreme Court was well advised as to the policies of school boards in selecting teachers, principals and school personnel. Yet no specific holding regarding these different classes of persons was rendered either by the Supreme Court nor the Court of Appeals in the foregoing cases. This court can not indulge in a presumption that these Federal Courts decided the points of law asserted by plaintiff by inference. The judicial power of the Federal Courts under Article III, Section 2, of the United States Constitution extends to the adjudication of cases and controversies. The controversy must be definite and concrete touching the legal relations of *parties* having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Aetna Life Insurance Company of Hartford, Conn. v. Haworth, 300 U.S. 227, at page 240 et seq., 57 S.Ct. 461, 81 L.Ed. 617 and the cases cited therein.

The mere mention of the word "teachers" or "administrative personnel", or "school system" in these cases provide neither a legal nor logical basis for their use as authority on the propositions here. These matters were obviously not before the courts and therefore the courts made no ruling thereon.

■ This Court finds that under the authorities cited by the plaintiffs, there is no holding to the effect that assignment of teachers, school personnel or principals on the basis of race or color is a violation of the equal protection clause adhering to students as defined by the Supreme Court.

Even if these cases do not provide legal precedent for plaintiffs to bring this action, they argue, such right under the Constitution is, nevertheless, theirs to assert here for they allege that they are suffering irreparable injury by the assignment of teachers, principals, and other school personnel. The logic of such contention is questionable. Students herein can no more complain of injury to themselves of the selection or assignment of teachers than they can bring action to enjoin the assignment to the school of teachers who were too strict or too lenient. It would be an absurdity to say that students in one part of Florida in a county where the salaries of teachers are low could maintain an action against the school board to increase their teachers' salaries to conform to counties in Florida where salaries are higher on the grounds that having lower salaried

teachers would deprive the student of equal protection of the laws under the Constitution. This is analogous to the allegations of the complaint here.

Plaintiffs' other contention to the effect that students can raise constitutional rights of others not parties herein finds sanction, they say, in the language of N. A. A. C. P. v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488.

██ Plaintiffs cite the familiar and clear doctrine that one can raise the constitutional rights of another not a party to the suit if "its nexus with them is sufficient to permit that it act as their representative before this Court. See N. A. A. C. P. v. State of Alabama, supra. It seems too obvious for belaboring that no such standard of mutuality can be established between pupils and teachers, between pupils and administrative staff, between pupils and other school personnel.

For the pupils to enjoin the designation, direction and assignment of the teacher; the principal, the administrative staff, the dietician, the janitor, is set forth here as a legal right inherent in the language of the Brown cases interpreting the Constitution; or in the alternative, it is asserted the pupils have legal standing in court to represent these groups in securing for these groups such rights claimed for and in behalf of the teachers and others, none of whom are parties to this suit.

This, in essence, is the thrust of the language of the complaint sought to be stricken. Its efficacy as educational theory, while certainly novel and perhaps subject to some critical disputations by those more expert in the ageless and delicate art of guidance of the young, is not a matter for the taking of testimony in this proceeding. Its assertion here fails —not from such considerations, whether deemed enlightened and salutary or mere nonsense—from the clear lack of any legal sanction.

For these reasons then, all portions of the complaint and prayer concerning teachers, administrative personnel, school sytem, etc., are stricken by appropriate order in accordance herewith this day.

The duty placed upon the District Courts with reference to admission, without discrimination due to race, of children to public schools is explicit, and this holding here in no way impairs the language of the complaint in regard thereto and to which defendants must reply in accordance with order of this date.