**BOARD OF PUBLIC INSTRUCTION OF DUVAL COUNTY, FLORIDA, et al., Appellants,**

v.

**Daly N. BRAXTON and Sharon Braxton, Minors, by Sadie Braxton, their mother and next friend, et al., Appellees.**

No. 20294.

United States Court of Appeals Fifth Circuit.

Jan. 10, 1964.

Rehearing Denied Feb. 20, 1964.

Jones, Circuit Judge, dissented.

Elliott Adams, Davisson F. Dunlap, Fred H. Kent, of Ulmer, Murchison, Kent, Ashby & Ball, Jacksonville, Fla., for appellants.

Earl M. Johnson, Jacksonville, Fla., Constance Baker Motley, New York City, Leroy D. Clark, New York City, for appellees.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and JOHNSON, District Judge.

TUTTLE, Chief Judge.

This is an appeal by the Board of Education from an order of the trial court requiring a start in the desegregation of the public school system of Duval County, Florida, of which the city of Jacksonville is the county seat. The basis of the appeal is that by including a prohibition against approving budgets, making available funds, and otherwise providing the physical facilities to "maintain or support a school system operated on a racially segregated basis"

and by prohibiting "the assignment of teachers, principals, and other supervising or supporting personnel to schools on the basis of the race and color of the" said persons or the race and color of the pupils attending the respective schools, the trial court went too far. This, it is asserted, results both because there was a lack of a finding of facts warranting these two injunctive orders and also because there is nothing in the decided school desegregation cases that warrants such broad orders of injunction.

In point of fact, relatively little was required to be done by the Board of Education *immediately* by the trial court's injunctive order.[1] It outlined under paragraphs A, B, C, D, and E certain prohibited acts. Under paragraph F, it prohibited applying the criteria of the Florida Pupil Assignment Law other than uniformly and without racial discrimination. The order made only the requirements of paragraph F applicable immediately, but it then required that the defendants "on or before October 30, 1962, submit to the Court for its consideration a detailed and comprehensive plan for putting subparagraphs A, B, C,

---

1. After reciting the preliminary paragraphs the injunction contained the following provisions:

"A. Continuing to operate a compulsory biracial school system in Duval County, Florida;

"B. Continuing to maintain a dual scheme or pattern of attendance areas based upon race or color;

"C. Assigning pupils to schools on the basis of race and color of the pupils;

"D. Approving budgets, making available funds, approving employment contracts and construction programs, and approving policies, curricula and programs designed to perpetuate, maintain or support a school system operated on a racially segregated basis.

"E. Assigning teachers, principals, and other supervising or supporting personnel to schools on the basis of the race and color of the persons to be assigned and/or the race and color of the pupils attending the schools to which the personnel are assigned; and

"F. Applying the criteria of the Florida Pupil Assignment Law, or any other

criteria for admission, assignment or reassignment, to schools other than uniformly and without racial discrimination as to use or application there of (see paragraphs 5, 6, 7 and 10 of the Conclusions of Law filed herewith for clarification).

"4. (a) The provisions of subparagraph F of paragraph 3 above are effective immediately and systemwide throughout the county.

"(b) The provisions of subparagraphs A, B, C, D and E of paragraph 3 above shall not be effective until the further order of this Court.

"(c) The defendants are directed, on or before October 30, 1962, to submit to the Court for its consideration a detailed and comprehensive plan for putting subparagraphs A, B, C, D and E of paragraph 3 above into effect throughout the Duval County public school system.

"(d) Upon the filing of said plan and hearing thereon, the Court will enter its supplemental decree herein accepting or rejecting the same in whole or in part and making such further disposition as right and justice may require."

D and E of paragraph 3 above into effect throughout the Duval County public school system."

Appellants, recognizing as they do, the binding authority of Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, and the many decisions of this Court interpreting and giving effect to that landmark decision, do not contest that part of the trial court's order that is included in the first lettered paragraphs, A, B and C. Nor do they complain of paragraph F, which requires them to apply the criteria of the Florida Pupil Assignment 'Law nonracially. They do complain of being required to submit a plan which includes the requirements under paragraphs D and E. The principal attack is made on that provision which prohibits the assigning of teachers, principals and other supervising or supporting personnel to schools on the basis of race.

█ We are faced *in limine* with the question whether we have before us an appealable order. While neither party raises the issue, since both apparently desire to have this Court's ruling on the question at issue, absence of an appealable order denies this Court of jurisdiction and must be noticed by the Court itself. It is plain that much of the order of the trial court is deferred in point of time. To this extent it may be said that the litigants may have an opportunity to prevail upon the Court prior to the actual effectuation of these parts of the order to request that they may be modified. To that extent they may be considered to be interlocutory orders. However, it was much the same kind of an order that came before this Court in Orleans Parish School Board v. Bush, 5

Cir., 242 F.2d 156.[2] Although the Orleans Parish order required immediate acceptance of the principle of non-segregated schools, it is obvious that the order allowed the Board time to put it into effect. Clearly implying that arrangements should be started at once, the trial court nevertheless fixed the date after which there were to be no further distinctions based on race at "such time as may be necessary to make arrangements for admission of children to such schools on a racially nondiscriminatory basis with all deliberate speed as required by the decision of the Supreme Court in Brown v. Board of Education." Nevertheless, in that appeal and also in a subsequent one in which the validity of the order was attacked by reason of the failure of the successful plaintiffs to post the bond required in the original order, this Court has not considered the order one that is not appealable by reason of not being an injunctive order. Of course, neither the order in the Bush case nor the one before us here is a final order in the sense that nothing further is left to be done by the trial court. It is appealable, therefore, if at all, only under the provisions of 28 U.S.C.A. § 1292(a) (1). That section gives Courts of Appeal jurisdiction over "[i]nterlocutory orders of the district courts * * * granting, continuing, modifying, refusing or dissolving injunctions * * *." It thus becomes necessary for us to determine whether the order of the trial court is one which "grants an injunction."

In light of our treatment of the order in the Bush case, it seems that there would be little question but that the order here appealed from falls within the language of 28 U.S.C.A. § 1292(a) (1), were it not for a well considered case

2. The order in that case was as follows:
 "It is Ordered, Adjudged and Decreed that the defendant, Orleans Parish School Board, a corporation and its agents, its servants, its employees, their successors in office, and those in concert with them who shall receive notice of this order, be and they are hereby restrained and enjoined from requiring and permitting segregation of the races in any school under their su-

pervision, from and after such time as may be necessary to make arrangements for admission of children to such schools on a racially nondiscriminatory basis with all deliberate speed as required by the decision of the Supreme Court in Brown v. Board of Education of Topeka [347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873], supra."

decided by the Court of Appeals for the Second Circuit, Taylor v. Board of Education, etc., 2 Cir., 288 F.2d 600. In that case, involving an order relating to the school system for the City of New Rochelle, New York,[3] that court, one judge dissenting, raised the issue of appealability on its own motion and decided that Judge Kaufman's order in the trial court ordering the submission of a plan did not amount to mandatory injunction.

Of course, it should be made plain here that paragraph F of the order before us did require immediate application of the Florida Pupil Assignment Law. If the appellant, Board, had appealed from the effect of this part of the order there would be no doubt about the appealability. It has not, however, appealed from this provision of the order, thus leaving as the basis for its appeal only subparagraph (c) of paragraph 4, which requires them "on or before October 30, 1962, to submit to the court for its consideration a detailed and comprehensive plan for putting subparagraphs A, B, C, D and E of paragraph 3 above into effect throughout the Duval County public school system."

 The clear difference between the order before us and that in the New Rochelle case is that the trial court did expressly include in its order the following language in paragraph 3:

"The defendants, The Board of Public Instruction of Duval County, Florida * * * are, with respect to the public school system of Duval County, Florida, enjoined and restrained permanently from allowing,

permitting or committing all, or any of the following:"

Then follow the lettered paragraphs which are quoted in Footnote 1 above. Then, although the trial court provided that the provisions of subparagraphs A, B, C, D and E "shall not be effective until the further order of this Court" it then said, "The defendants are directed, on or before October 30, 1962, to submit to the Court for its consideration a detailed and comprehensive plan for putting subparagraphs A, B, C, D and E of paragraph 3 above into effect throughout the Duval County public school system." Thus it is that having enjoined the doing of the acts mentioned in the lettered paragraphs and having deferred the date on which the injunction should go into effect, the Court positively and affirmatively directed that a plan be submitted that *would provide for carrying out the paragraphs that were to be later effectuated.* We conclude that the ordering of the plan dealing expressly with these prohibited acts amounts to a mandatory injunction. To the extent that this may differ with the understanding of what constitutes an injunction as expressed by the Court of Appeals for the Second Circuit, we must respectfully disagree with its views. We think, however, that there is no real conflict because, as that Court said, "Whether Judge Kaufman's direction for the submission of a plan on April 14 is a mandatory injunction requires, in the first instance, interpretation of what was said." What was said here was quite different from the limited statement made by Judge Kaufman in his decree.

3. The decree of the trial court there before the Court of Appeals was as follows:

"In determining the manner in which the Negro children residing within the Lincoln district are to be afforded the opportunities guaranteed by the Constitution, I will follow the procedure authorized by the Supreme Court in Brown v. Board of Education, 349 U.S. 294 [75 S. Ct. 753, 99 L.Ed. 1083] (1955), and utilized by many district courts in implementing the Brown principles. Thus, I deem it unnecessary at this time to determine the extent to which each of the

items of relief requested by plaintiffs will be afforded. Instead, the Board is hereby ordered to present to this Court, on or before April 14, 1961, a plan for desegregation in accordance with this Opinion, said desegregation to begin no later than the start of the 1961–62 school year. This court will retain jurisdiction of this action until such plan has been presented, approved by the court, and then implemented.

"The foregoing Opinion will constitute the court's findings of fact and conclusions of law."

■ Having concluded that this is an appealable order, we come next to the merits of the controversy. Stated in general terms, that question is whether the decision of the United States Supreme Court in Brown v. Board of Education of Topeka, Kansas, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and the subsequent appearance of the same case, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, or other authoritative decisions of that or this court, authorize an order by a trial court, once it has found the existence of a dual system of schools operated on a racially segregated basis, to include in its order seeking to remedy such a situation a prohibition against the assignment of teachers and other personnel on a racial basis and to prohibit the financing and physical arrangement of schools on a racial basis. We think the answer to this question is clear. The Supreme Court's solution of the question of the manner "in which relief is to be accorded" under its original decision in that connection was expressed as follows:

> "While giving weight to these public and private considerations, the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an effective manner. The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. To that end, the courts may consider problems related to *administration, arising from the physical condition of the school plant, the school transportation system, personnel,* revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis." (Emphasis added.)

The argument of appellants here is largely to the effect that no court heretofore has expressly required the elimination of teacher assignment by race or the planning of schools and finances to avoid racial operation of the schools. This argument, of course, falls far wide of the mark. Neither, has any appellate court had occasion to hold that for a trial court to go so far would be unwarranted under the Supreme Court's decision. In Augustus v. Board of Public Instruction of Escambia County, Florida, 5 Cir., 306 F.2d 862, this Court set aside an order of the trial court dismissing allegations in the complaint filed on behalf of Negro school children seeking to put an end to the assignment of teachers and other personnel by race. We thus held that it is a matter of proper concern in such a suit as the one now before us that teachers are so assigned. So too, in Calhoun et al. v. A. C. Latimer et al., 5 Cir., 321 F.2d 302, this Court held that the trial court did not err in postponing consideration of the teacher assignment question.

Where, however, the trial court, which has the first duty with respect to requiring action if none is taken initially by the Board of Education, considers that in order fully to implement the Supreme Court's decision it will be necessary to put an end to the assignment of teachers and other personnel by race to the schools within the Board's jurisdiction we think it can not conceivably be said that such an order goes beyond the permissible range of the trial court's choice of means to put an end to an operation of schools on a racially segregated basis. The same, of course, is true with respect to the requirement that the plan called for by the injunctive order make provision for putting into effect an end of approving budgets, making funds available, approving employment contracts and construction programs, and approving policies, curricula and programs designed to perpetuate, maintain or support a school system operated on a racially segregated basis—the challenged provisions of paragraph D of the Court's order.

We conclude that the basic findings made by the trial court, which are not here in dispute, that "up to the present

time, said biracial school system has been and is presently continued, perpetuated and maintained by the defendants as a matter of policy, custom and usage," and that "now as in the past, Negro personnel are assigned to Negro schools and white personnel are assigned to white schools," and the further finding that "in the eight (8) years since the first Brown decision the defendants have not adopted any plan whatever for eliminating racial discrimination in the public school system committed to them for administration," fully warrant the Court's conclusion: "In the instant case (and in similar cases) this Court is required by clear and binding precedent to frame a broad decree, granting to the plaintiffs in substance the injunctive relief sought by the complaint." The contested provisions of the decree fall well within the permitted range of relief that can properly be granted as a part of such decree.

The judgment is affirmed.

JONES, Circuit Judge (dissenting).

I find myself out of harmony with the majority, both on the jurisdictional question and on the merits. I do not think the order from which the appeal is taken is such a final decision as is within the terms of 28 U.S.C.A. § 1291. A decision is final for the purpose of an appeal when it terminates the litigation and leaves nothing to be done but to enforce what has been determined. Ex parte Norton, 108 U.S. 237, 2 S.Ct. 490, 27 L.Ed. 709; Winthrop Iron Co. v. Meeker, 109 U.S. 180, 3 S.Ct. 111, 27 L.Ed. 898; Milton v. United States, 5th Cir. 1941, 120 F.2d 794; Smith v. Kincade, 5th Cir. 1956, 232 F.2d 306. This is true even though the merits of the cause may have been substantially decided by the trial court. Life & Fire Insurance Co. v. Adams, 9 Pet. 571, 34 U.S. 571, 9 L.Ed. 234. The majority agrees with this view but decides that the order of the district court is one granting an injunction and appealable under 28 U.S.C.A. § 1292(a) (1). It would seem to be no injunction at all where the court directed something to be done and then provided that it need not be done unless required by a further order. As to the direction to submit a plan I think that the case of Taylor v. Board of Education, 2nd Cir. 1961, 288 F.2d 600, cert. den. 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339, is not only well considered, as the majority says, but is not to be distinguished from this case. I think the Second Circuit has stated a sound principle and that we should follow it. The failure of the Court to notice an absence of jurisdiction in Orleans Parish School Board v. Bush, 242 F.2d 156, cert. den. 354 U.S. 921, 77 S.Ct. 1380, 1 L.Ed.2d 1436, if jurisdiction was not there present, could hardly confer jurisdiction in a similar case where jurisdiction is not otherwise present.

The determination made by the majority on the merits of the appeal seems to me to be incorrect. The decision is based, as it must be, on Brown v. Board of Education. In the Brown case there had been a finding that:

"Segregation of white and colored children in public schools has a detrimental effect upon the colored children. The impact is greater when it has the sanction of the law; for the policy of separating the races is usually interpreted as denoting the inferiority of the negro group. A sense of inferiority affects the motivation of a child to learn. Segregation with the sanction of law, therefore, has a tendency to [retard] the educational and mental development of negro children and to deprive them of some of the benefits they would receive in a racial[ly] integrated school system." 347 U.S. 483, 494, 74 S.Ct. 686, 691, 98 L.Ed. 873.

It was on these and similar fact findings that the Supreme Court made its determination that the racial segregation of pupils in public schools was inherently unequal. Laws and customs requiring such segregation deny equal protection of the law to the class at which they are directed. By judicial alchemy the factual determination of Brown has been

transmuted into a rule of law so that it is now conclusively presumed that racial segregation of pupils is detrimental to them and denies to them a constitutionally guaranteed right. Stell v. Savannah-Chatham County Board of Education, 5th Cir. 1963, 318 F.2d 425.

It should be kept in mind, however, that the principles of law declared in Brown were dependent upon the factual finding of injury to pupils. In this case it is found that "Negro personnel [teachers, principals, supervisory and operating personnel] are assigned to Negro schools and white personnel are assigned to white schools." The appellees, who were plaintiffs in the district court, are Negro children who are pupils in the public schools of Duval County, Florida. In their complaint they allege that they "and the members of their class, are injured by the policy of assigning teachers, principals and other school personnel on the basis of the race and color of the children attending a particular school and the race and color of the person to be assigned." There was no proof made of the injury and no finding by the court that the policy of assigning Negro personnel to Negro schools and white personnel to white schools has a detrimental effect upon Negro children. No such finding of fact has been made in any other case, so far as I am aware.

In Augustus v. Board of Public Instruction of Escambia County, D.C.N.D. Fla.1960, 185 F.Supp. 450, the complaint alleged, among other things, that the plaintiffs, Negro children, were injured by the policy of the School Board of assigning teachers, principals and other school personnel on the basis of the race and color of the children attending a particular school and color of the person to be assigned. The allegation was substantially the same as that in this case. In the Escambia County case the district court held that, as a matter of law, no rights of the Negro children plaintiffs were violated by the assignment of school personnel on the basis of race or color. The averments were stricken by the district court. This Court reversed, holding that fact issues were presented which should have been determined, and that the question should not have been disposed of on a motion to strike. Augustus v. Board of Public Instruction, 5th Cir. 1962, 306 F.2d 862. Here the district court has held that, as a matter of law, the Negro children plaintiffs had rights which were violated by the assignment of school personnel on the basis of race or color. It is my belief that there should be proof made of the injury resulting from the manner of assignment of personnel. I think it should be shown, if it can be shown, that the manner of assignment has a detrimental effect on the Negro children with a tendency to retard their educational and mental development, as was done in Brown v. Topeka with respect to segregation of pupils, or there should be shown some other detriment in proof of the allegation of the complaint.

The Supreme Court, in its second Brown case, said, as quoted in the opinion of the majority, that "the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units *to achieve a system of determining admission to the public schools on a nonracial basis * * *."* 349 U.S. 294, 300–301, 75 S.Ct. 753, 756, 99 L.Ed. 1083. [Emphasis supplied.] Brown dealt with pupil segregation, not with assignments of school personnel. The comments of the Supreme Court are to apply to cases in which "admission to the public schools on a nonracial basis" is sought. "Admission to public schools" refers, surely, to admission of pupils. It cannot be said that teachers, principals and administrative personnel are "admitted" to the public schools. It is hardly persuasive authority for the proposition that racial segregation of school personnel is injurious to school pupils, to say that in cases involving the admission of pupils to public schools on a nonracial basis consideration may be given to school per-

sonnel. It does not follow that because injury to Negro children will be presumed from racial segregation of pupils in public schools, proof need not be made of the factual allegation that injury to Negro children as a class is caused by racial segregation of school personnel.

For the reasons which I have tried to outline, I dissent.

Rehearing denied; JONES, Circuit Judge dissenting.