Harriet D. NESBIT, a minor, by her parents and next friends, Mr. and Mrs. Harry Nesbit, William Shuford, Gale Shuford and Tonia Shuford, minors, by their father and next friend, William Shuford, Jr., Philip S. Hamilton, Gerald H. Clark, Geraldine H. Clark, Mary L. Clark, Beverly Clark, Ronald M. Clark and Donald C. Clark, minors, by their mother and next friend, Mrs. Blanch H. Clark, Plaintiffs,

The STATESVILLE CITY BOARD OF EDUCATION, a public body corporate of the City of Statesville, North Carolina, and A. D. Kornegay, Superintendent of Statesville City Public Schools, Defendants.

Civ. No. 486.

United States District Court
W. D. North Carolina,
Statesville Division.

Heard July 31, 1964.

Decided Aug. 4, 1964.

Calvin L. Brown, J. LeVonne Chambers, Charlotte, N. C., Derrick A. Bell, Jr., and Jack Greenberg, New York City, and Conrad O. Pearson, Durham, N. C., for plaintiffs.

Robert A. Collier, Jr., Collier, Harris & Collier, Statesville, N. C., for defendants.

CRAVEN, Chief Judge:

This is a school case. Plaintiffs are eleven Negro children, and the defendants are charged with the responsibility of operating the school system of the City of Statesville. The suit was begun March 14, 1964. Answer was filed May 11, 1964. In June of 1964, plaintiffs asked the Clerk that the case be calendared for trial and, upon learning that the next term of court set for the Statesville Division would not begin until September 28, 1964—after the beginning of the next school year—asked for a hearing on the motion for preliminary injunction. Because of the alleged violation of constitutional rights, the case was advanced on the calendar and the motion for preliminary injunction was heard and denied on July 29, 1964. Counsel for the School Board commendably made no effort to delay the matter and consented that the case be tried on the merits two days later, i. e., July 31, 1964, and it has now been heard upon the basis of stipulations and testimony offered in the record. There can be no justification

for the drastic remedy of preliminary injunction to *change* the status quo where counsel cooperate to permit an immediate trial on the merits. Since the school year begins within a month, time is, of course, of the essence.

The court finds the facts to be as stated in the "Agreed Statement of Facts" signed by counsel and filed July 31, 1964. As authorized by said stipulation, in paragraph 10 thereof, the court also adopts the answers to the interrogatories addressed to A. D. Kornegay, Superintendent of the schools, as being additional facts found by the court.

The posture of the case has changed considerably since the Answer was filed.[1] In open court, counsel for the School Board, with complete candor, concedes that the rights of the plaintiffs and the spurious class, for whose benefit the action was instituted, have been and are being violated. Racial segregation in the schools was required by the Constitution of North Carolina until 1954, and it was not until 1956 that the North Carolina Supreme Court found North Carolina's constitutional requirement invalid. Constantian v. Anson County, 244 N.C. 221, 93 S.E.2d 163 (1956). Since 1954, the School Board of Statesville has routinely assigned each pupil to the school he attended the previous year, and all first grade pupils have been segregated by race. This practice, of course, perpetuated the old segregated system until the school year 1963–1964. During the summer of 1963, thirty Negro children applied to the School Board for transfer to previously all-white schools. Of these thirty, four were in senior high school and five were first grade pupils. All high school and first grade applications were granted, and the applicants entered the previously-white schools in September 1963.[2]

The Superintendent of schools, Mr. Kornegay, on cross-examination and in answers to interrogatories, pointed out that twenty-three out of the thirty applications were for transfers to the same school; that this school was so crowded that one entire sixth grade had to be moved out to the junior high school; that even so all five Negro applicants to the first grade of this school were admitted; that the School Board had two public hearings in an effort to determine the attitude of the community and considered the applications in the public hearings; that considerable opposition was voiced to any integration, but that the School Board ordered the admission of nine of the applicants despite such opposition. Mr. Kornegay expressed his own opinion and that of the Board that first graders and high school students adjust more readily to integration than the intermediate grades, on the theory, apparently, that first graders are so young as to be virtually without prejudice and that high school students are sufficiently mature to accept the inevitable.

No evidence was offered at the hearing remotely tending to show that there might be any injury to any Negro pupil by reason of his being taught by Negro teachers. All of the evidence tends to show the contrary; that both faculties, white and colored, are strong. No evidence was offered tending to show that the schools attended by Negro children were generally or in any way inferior by reason of plant facilities or teaching staff to the schools attended by white

1. According to a feature article by Peter Kohler, Observer staff writer, on page 8A of the Charlotte Observer for Sunday, August 2, 1964, a new spirit of racial cooperation and quiet progress has replaced within the last several months an atmosphere of racial discord previously existing in Statesville for some years.

2. The parents of one first grade pupil withdrew the application, choosing to return to the Negro school. The remaining 21 applicants were in various grades other than the first grade and high school, and all of these applications were denied. The 11 plaintiffs are a portion of the original 30 applicants, and 2 of them attended the previously-white school during the school year 1963–64. No additional or new applications from pupils other than the original 30 have been received by the School Board.

children. But equality is no longer the test, and even so, plaintiffs are entitled to prefer a school attended by white children. Jeffers v. Whitley, 309 F.2d 621, 625 (4th Cir. 1962). The only relevance, if any, of such testimony bears upon the speed with which plaintiffs and their class are entitled to have their remedy. The court finds as a fact that the relative merits of the schools with respect to physical plant and facilities and teaching staff are sufficiently similar so that disparity is not a factor with respect to the speed of the remedy that must be afforded.

## I.

■ Are plaintiffs—all of whom are school children—entitled to require the integration of the teaching personnel in the Statesville city schools? Rights derived from the 14th Amendment are individual and are to be individually asserted in the federal courts. Jeffers v. Whitley, supra. Teachers and administrative school personnel are not within the class represented by plaintiffs, and plaintiffs cannot assert or ask protection of the constitutional rights of the teachers and others who are neither parties to the case nor within the class. Mapp v. Board of Education of Chattanooga, 319 F.2d 571, 576 (6th Cir. 1963). Compare: Board of Public Instruction of Duval County, Florida v. Braxton, 326 F.2d 616 (5th Cir. 1954). It is, of course, possible that a segregation of school teaching personnel could be injurious to the plaintiffs. If the Negro teachers were shown to be inferior in educational qualifications, then the plaintiff children, being injured, might appropriately be afforded relief. Where there is no evidence tending to show disparity of excellence between white and Negro teachers, and where no teacher has seen fit to join in the action, there is no basis for affording plaintiffs the relief they seek with respect to teaching personnel. Certainly plaintiffs are not hurt, and if the teachers are, they do not complain.

## II.

At the trial, the School Board offers the following plan:

"That a free reassignment plan be immediately initiated for grades one through six, and that any Negro child who applies by August 15, 1964, to be transferred to another school may be transferred as of course; that the same plan be extended in September 1965 to the tenth, eleventh and twelfth high-school grades upon application by any Negro pupil on or before July 1, 1965; that the same free transfer plan be extended to any Negro pupil in the seventh, eighth and ninth grades beginning in September 1966. The Board proposes that applications be freely available in the principal's office and superintendent's office and that they will be routinely granted. The application will be extremely simple—containing the name of the child, the school in which he may be presently enrolled, and the school to which he would like to be transferred. No reason need be assigned by the applicant, and no burdensome administrative procedures or hearings will be required. It is not even necessary under the plan as proposed that the applicant come to the school officials, but, instead, the application may be mailed to the School Board."

The effect of the proposed plan is to permit integration of the first six grades immediately, of the high school in one year, and of the seventh, eighth and ninth grades in two years. The Board also agrees that a pupil who elects under the plan to transfer to a previously all-white school in September 1964 and who is in the sixth grade will automatically move into the seventh grade of a previously-white school in September 1965 and will not be "fed back" into a Negro school. The effect of this is simply to speed up the plan to the extent of permitting some integration of the seventh grade in 1965 rather than 1966.

The proposed plan demonstrates that this is not an obstinate school board bent upon evading its duty by denying that it has one. Unquestionably, plaintiffs and the spurious class they represent are now being denied their constitutional rights. The question is not *whether* these wrongs are to be corrected and the rights vindicated, but simply how fast it must be accomplished. The *only* question before the court is whether this plan is a reasonable one. The plan is not the sort of legal gimmick condemned in Jackson v. School Board of City of Lynchburg, Virginia, 321 F.2d 230 (4th Cir. 1963). The transfer system proposed is not a one-way street to perpetuate segregation. Instead, it permits plaintiffs and the spurious class to freely choose as much integration as they wish. Nor can such choice be thwarted by disgruntled white children and/or their parents as in Jackson.

"Grade a year" plans are no longer sufficient. Jackson v. School Board of City of Lynchburg, Virginia, supra. But nothing contained in Watson v. City of Memphis, 373 U.S. 683, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963), or Griffin v. County School Board of Prince Edward County, 84 S.Ct. 1226, or Calhoun v. Latimer, 84 S.Ct. 1235, 1236, dictates that the remedy must be granted *at once*, for the entire class, in all twelve grades.

The time for mere "deliberate speed" has run out. "Now" has not yet arrived. The relief proposed to be granted by the School Board will be complete within two years. In Calhoun v. Latimer, supra, the Supreme Court said:

"(W)e are not unmindful of the deep-rooted problems involved. Indeed, it was consideration for the multifarious local difficulties and 'variety of obstacles' which might arise in this transition that led this Court eight years ago to frame its mandate in Brown in such language as 'good faith compliance at the earliest practicable date' and 'all deliberate speed.' Brown v. Board of Education, 349 U.S. [294], at 300, 301, 75 S.Ct. [753], at 756, [99 L.Ed. 1083]. Now, however, eight years after this decree was rendered and over nine years after the first Brown decision, the context in which we must interpret and apply this language to plans for desegregation has been significantly altered. Compare Watson v. City of Memphis, supra."

It cannot be held as a matter of law that the deep-rooted problems in Statesville, North Carolina, can be better resolved by this district court than by a conscientious school board honestly endeavoring to solve the problem and to grant to plaintiffs and the class they represent the constitutional rights to which they are entitled.

The only possible justification for a system of racial assignments, as practiced in Statesville, is the volition of the pupils and their parents. But a voluntary separation of the races in schools is uncondemned by any provision of the Constitution. Jeffers v. Whitley, supra, 309 F.2d at 627. Here, the School Board proposes a free choice for Negro children or their parents who are dissatisfied with the school to which the child may be assigned. The choice is not conditioned upon exhaustion of administrative remedies amounting to unnegotiable obstacle courses. Instead, nothing is required except that the child or his parents make his choice known to the School Board. It is not even required that he state a reason for the choice. In Jeffers v. Whitley, supra, and Wheeler v. Durham City Board of Education, 309 F.2d 630 (4th Cir. 1962), the court was faced with school boards which not only obstinately refused to propose a plan for the elimination of racial discrimination, but also denied, in the face of reality, that there was such discrimination. Here the School Board honestly admits the system of segregation and asks only that it be granted two years time within which to permit complete freedom of choice to all Negro pupils in all grades. Further, the School Board proposes to grant that freedom of choice immediately to one-half of the grades, i. e., one through six. The Board recognizes that

parents of school children cannot be said to have any freedom of choice until there has been some announcement or a letter of notification that such a right exists, and consents to send a letter to each affected pupil and his parents advising of the choice. The School Board agrees that if the parents of pre-school children are not known and reached by the proposed letter of notification, that such children and their parents must be afforded the freedom of choice upon presentation for registration at the beginning of the school year, and agrees that the parents of such children shall be so advised—either by letter or by announcement—that the choice exists.

So long as school boards are willing to move rapidly toward compliance with the constitutional requirements of the school cases, they ought to be allowed to do so.

■■ Within certain limits, it is not required that a federal district judge substitute his own judgment for that of a conscientious school board as to what may be wise or unwise, hasty or slow. The responsibility for the operation of the schools is still in the school boards and not in the courts. Only in exceptional cases, such as Jeffers v. Whitley, supra, and Wheeler v. Durham City Board of Education, supra, where the school boards not only refused to act but denied a duty to do so, is it appropriate for a federal court to resort to injunction to compel compliance with the Constitution. Inordinate delay, or even deliberate speed, can no longer be justified, but neither have we come so far that a one year delay for a fourth of the pupils and a two year delay for another fourth may be characterized as unreasonable. This is so for the simple reason that we must not be "unmindful of the deep-rooted problems involved." Goss v. Board of Education, 373 U.S. 683, 689, 83 S.Ct. 1405, 1409, 10 L.Ed.2d 632 (1963). It cannot be said with certainty and as a matter of law that the School Board is wrong in its contention that it can make these adjustments of the deep-rooted problems more easily and with less friction in the first six grades, and that given the experience in those grades it will then be in a position to more easily integrate the high school to a greater extent than the present experiment.[3] Nor is it implausible or incredible that greater difficulty in effecting change of custom may be encountered in the seventh, eighth and ninth grades. These children are in the age group of thirteen to sixteen. Adolescence has its own problems. Most dropouts occur, according to the school superintendent, in the ninth grade.

The question, however, is not whether the School Board is right, but whether it is so plainly wrong as to evidence a lack of good faith so as to justify the court in interposing its own notions of what may be wise and expedient in view of the requirements of the Constitution.

■ Under all of the circumstances, it is adjudged that the proposed plan is a reasonable one, and it will be approved by the court so long as it is administered in good faith and the promise of free choice is kept both to the ear and the hope.

Since considerable time has elapsed since the plaintiffs in the case made their first application to the School Board, and since there appears to be no sound reason for making a distinction between the plaintiffs themselves and the members of the spurious class for whom the suit is brought, no greater relief will be afforded plaintiffs than to other members of their class. It is not burdensome to require of plaintiffs, as well as of all members of the class, that they mail the application form provided by the Board. Nothing else is required. There are no burdensome administrative procedures, and there will be no hearings.

Counsel may submit an appropriate judgment (1) denying the relief prayed for with respect to teaching personnel in the schools, (2) carefully spelling out the proposed plan of the School Board and approving the same, (3) denying

---

3. Negro pupils now attend the high school,.

relief to the individual plaintiffs except in accordance with the plan, i. e., giving to plaintiffs the same relief as that granted to other members of the class, (4) requiring the School Board to write a letter to the parents of each child entering in grades one through six and to mail the same by the 8th day of August, 1964, plainly advising that each child may, upon request, be transferred to the school of his choice, (5) requiring that there be enclosed with said letter a simple application form to request such transfer, (6) and requiring that any such application received by the 15th of August, 1964, will be granted as a matter of course.

The court has no reason to doubt the Board intends to administer its proposed plan in good faith. An injunction, therefore, is not deemed necessary except to the extent hereinabove indicated.

The court will retain jurisdiction of the matter and, upon motion of either party, will consider modifications of the plan from time to time, as may be required to enable the Board to solve and eliminate any administrative difficulty that may arise, or by reason of other necessity.