## ALEXANDER ET AL. *v.* HOLMES COUNTY BOARD OF EDUCATION ET AL.

Decided September 5, 1969

See: 417 F. 2d 852.

*Jack Greenberg, James M. Nabrit III,* and *Norman C. Amaker* on the application.

*William A. Allain,* Assistant Attorney General of Mississippi, and *John C. Satterfield* in opposition.

*Solicitor General Griswold* filed a memorandum for the United States.

MR. JUSTICE BLACK, Circuit Justice.

For a great many years Mississippi has had in effect what is called a dual system of public schools, one system for white students only and one system for Negro students only. On July 3, 1969, the Court of Appeals for the Fifth Circuit entered an order requiring the submission of new plans to be put into effect this fall to accelerate desegregation in 33 Mississippi school districts. On August 28, upon the motion of the Department of Justice and the recommendation of the Secretary of

Health, Education, and Welfare, the Court of Appeals suspended the July 3 order and postponed the date for submission of the new plans until December 1, 1969. I have been asked by Negro plaintiffs in 14 of these school districts to vacate the suspension of the July 3 order. Largely for the reasons set forth below, I feel constrained to deny that relief.

In *Brown* v. *Board of Education,* 347 U. S. 483 (1954), and *Brown* v. *Board of Education,* 349 U. S. 294 (1955), we held that state-imposed segregation of students according to race denied Negro students the equal protection of the laws guaranteed by the Fourteenth Amendment. *Brown I* was decided 15 years ago, but in Mississippi as well as in some other States the decision has not been completely enforced, and there are many schools in those States that are still either "white" or "Negro" schools and many that are still *all*-white or *all*-Negro. This has resulted in large part from the fact that in *Brown II* the Court declared that this unconstitutional denial of equal protection should be remedied, not immediately, but only "with all deliberate speed." Federal courts have ever since struggled with the phrase "all deliberate speed." Unfortunately this struggle has not eliminated dual school systems, and I am of the opinion that so long as that phrase is a relevant factor they will never be eliminated. "All deliberate speed" has turned out to be only a soft euphemism for delay.

In 1964 we had before us the case of *Griffin* v. *School Board,* 377 U. S. 218, and we said the following:

> "The time for mere 'deliberate speed' has run out, and that phrase can no longer justify denying these Prince Edward County school children their constitutional rights to an education equal to that afforded by the public schools in the other parts of Virginia." *Id.,* at 234.

That sentence means to me that there is no longer any excuse for permitting the "all deliberate speed" phrase to delay the time when Negro children and white children will sit together and learn together in the same public schools. Four years later—14 years after *Brown I*—this Court decided the case of *Green* v. *County School Board of New Kent County,* 391 U. S. 430 (1968). In that case MR. JUSTICE BRENNAN, speaking for a unanimous Court, said:

> " 'The time for mere "deliberate speed" has run out . . . .' The burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work *now." Id.,* at 438–439.

> "The Board must be required to formulate a new plan . . . which promise[s] realistically to convert promptly to a system without a 'white' school and a 'Negro' school, but just schools." *Id.,* at 442.

These cases, along with others, are the foundation of my belief that there is no longer the slightest excuse, reason, or justification for further postponement of the time when every public school system in the United States will be a unitary one, receiving and teaching students without discrimination on the basis of their race or color. In my opinion the phrase "with all deliberate speed" should no longer have any relevancy whatsoever in enforcing the constitutional rights of Negro students. The Fifth Circuit found that the Negro students in these school districts are being denied equal protection of the laws, and in my view they are entitled to have their constitutional rights vindicated now without postponement for any reason.

Although the foregoing indicates my belief as to what should ultimately be done in this case, when an indi-

vidual Justice is asked to grant special relief, such as a stay, he must consider in light of past decisions and other factors what action the entire Court might possibly take. I recognize that, in certain respects, my views as stated above go beyond anything this Court has expressly held to date. Although *Green* reiterated that the time for all deliberate speed had passed, there is language in that opinion which might be interpreted as approving a "transition period" during which federal courts would continue to supervise the passage of the Southern schools from dual to unitary systems.* Although I feel there is a strong possibility that the full Court would agree with my views, I cannot say definitely that it would, and therefore I am compelled to consider the factors relied upon in the courts below for postponing the effective date of the original desegregation order.

On August 21 the Department of Justice requested the Court of Appeals to delay its original desegregation timetable, and the case was sent to the District Court for hearings on the Government's motion. At those

---

*"The obligation of the district courts, as it always has been, is to assess the effectiveness of a proposed plan in achieving desegregation. There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. The matter must be assessed in light of the circumstances present and the options available in each instance. It is incumbent upon the school board to establish that its proposed plan promises meaningful and immediate progress toward disestablishing state-imposed segregation." *Green* v. *County School Board, supra,* at 439.

"Where [freedom of choice] offers real promise of aiding a desegregation program to effectuate conversion of a state-imposed dual system to a unitary, nonracial system there might be no objection to allowing such a device to prove itself in operation. . . .

"The New Kent School Board's 'freedom-of-choice' plan cannot be accepted as a sufficient step to 'effectuate a transition' to a unitary system. . . ." *Id.,* at 440–441.

hearings both the Department of Justice and the Department of Health, Education, and Welfare took the position that time was too short and the administrative problems too difficult to accomplish a complete and orderly implementation of the desegregation plans before the beginning of the 1969–1970 school year. The District Court found as a matter of fact that the time was too short, and the Court of Appeals held that these findings were supported by the evidence. I am unable to say that these findings are not supported. Therefore, deplorable as it is to me, I must uphold the court's order which both sides indicate could have the effect of delaying total desegregation of these schools for as long as a year.

This conclusion does not comport with my ideas of what ought to be done in this case when it comes before the entire Court. I hope these applicants will present the issue to the full Court at the earliest possible opportunity. I would then hold that there are no longer any justiciable issues in the question of making effective not only promptly but at once—*now*—orders sufficient to vindicate the rights of any pupil in the United States who is effectively excluded from a public school on account of his race or color.

It has been 15 years since we declared in *Brown I* that a law which prevents a child from going to a public school because of his color violates the Equal Protection Clause. As this record conclusively shows, there are many places still in this country where the schools are either "white" or "Negro" and not just schools for all children as the Constitution requires. In my opinion there is no reason why such a wholesale deprivation of constitutional rights should be tolerated another minute. I fear that this long denial of constitutional rights is due in large part to the phrase "with all deliberate speed." I would do away with that phrase completely.

*Application to vacate suspension of order denied.*