497 F.2d 1027
 Jeffrey HART, etc., et al., Plaintiffs-Appellants,
v.
The COMMUNITY SCHOOL BOARD OF BROOKLYN, NEW YORK SCHOOL
DISTRICT #21, etc., et al., Defendants-Appellees.
The COMMUNITY SCHOOL BOARD OF BROOKLYN, NEW YORK DISTRICT
#21, etc., et al., Defendants and Third-Party
Plaintiffs-Appellees,
v.
John V. LINDSAY, etc., et al., Third-Party Defendants-Appellees.
 Docket 74-1453.
 United States Court of Appeals, Second Circuit.
 Argued April 30, 1974.
Decided May 16, 1974, As Amended June 3, 1974.
 
 James I. Meyerson, New York City (Nathaniel R. Jones, New York City, and NAACP Special Contribution Fund, of counsel), for plaintiffs-appellants Jeffrey Hart et al.
 Hyman Bravin, New York City, for defendant Community School Bd. #21.
 Elliot L. Hoffman, New York City (Adrian Burke, Corp. Counsel, New York City, of counsel), for defendant Chancellor Irving Anker and third-party defendant Housing and Development Administration.
 Cyril Hyman, New York City (Edward Boyd, U.S. Atty., E.D.N.Y., of counsel), for third-party defendant U.S. Dept. of Housing and Urban Development.
 Robert Hammer, New York City (Louis J. Lefkowitz, Atty. Gen., State of N.Y., of counsel), for third-party defendant N.Y.S. Div. of Housing and Community Renewal and Urban Development Corp.
 Jeanne Hollingsworth, New York City, of counsel to Edward W. Norton, New York City, Gen. Counsel, for third-party defendant N.Y.C. Housing Authority.
 Before WATERMAN, FRIENDLY and MULLIGAN, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 A motion by plaintiffs-appellants in this school desegregation case for a preference and cross-motions by the state and city defendants and third party defendants-appellees for dismissal or, in the case of the city defendants, alternatively for summary affirmance, raise problems of some procedural complexity.[1]
 
 
 2
 The plaintiffs in this action in the District Court for the Eastern District of New York, characterized by the district judge as the 'first New York City school desegregation case to reach a federal court,' brought in August 1972, are a black, a Puerto Rican and a white child attending Mark Twain Junior High School (Public School #239) in Coney Island (suing in their own behalf and in behalf of others similarly situated) and the parents association of the school.[2] The original defendants were the Community School Board of Brooklyn, New York, District #21, of which Mark Twain is a part; the acting superintendent of the district; members of the school board; and the chancellor of the Board of Education of the City of New York. Claiming that any segregation was a result of housing patterns for which others were responsible, the school board and one of its members impleaded the City of New York, the mayor, and a variety of city, state and federal housing and urban development boards and officials. A motion for a preliminary injunction was withdrawn in November 1972 on assurance that there would be an expedited trial. Although this was completed by March 1973, plaintiffs ultimately renewed their motion for a preliminary injunction because of aggrievement at the length of time that appellees were being allowed for briefs.
 
 
 3
 When the district court denied this, an appeal was taken to this court, 28 U.S.C. 1292(a)(1). Observing that the 'litigation comes to us in a curious posture,' the panel which heard that appeal directed that the judge either make the findings of fact and conclusions of law required by F.R.Civ.P. 52(a) when a temporary injunction is granted or denied, or reach an expedited final determination. Hart v. Community School Board of Brooklyn, 487 F.2d 223 (2 Cir. 1973) (per curiam). In pursuit of the second of these alternatives, and after taking further evidence and hearing argument, the judge, on December 19, 1973, announced that he was going to find the school board and the chancellor 'liable under the Constitution, for conducting a segregated institution in violation of the Constitution,' that he wanted a desegregation plan 'effective September,' but that he was doubtful that he would be able to file his opinion by the end of 1973, as he had hoped when the appeal from the denial of the temporary injunction was argued in this court.
 
 
 4
 On January 28, 1974, Judge Weinstein filed a comprehensive opinion of 152 typewritten pages. The court found that although Mark Twain had 'never been operated under a constitutional or statutory provision that mandated or permitted racial segregation in public education,' Keyes v. School District No. 1, Denver, Colorado, 413 U.S. 189, 191, 93 S.Ct. 2686, 2689, 37 L.Ed.2d 548 (1973), the school's racial imbalance was due to factors for which the state was responsible under the criteria laid down in the Denver case, with particular emphasis on Mr. Justice Powell's concurrence. While we shall not attempt to encapsulate the long opinion in a sentence, the responsibility was thought to be two-fold: action or inaction by the school board; and action by the housing authorities which greatly increased the proportion of black and Puerto Rican families, particularly as a proportion of families with children, in what had been a predominantly white neighborhood. Because of this the court, although finding 'liability' solely on the part of the school authorities, considered it appropriate to impose duties on the housing officials as well, and indeed in addition on the Police Commissioner, the Commissioner of Recreation, and the Metropolitan Transit Authority which had not yet been joined as parties.
 
 
 5
 In the portion of his opinion entitled 'REMEDY', the judge stated that, in accordance with the invariable practice, 'local school authorities must be given an opportunity to provide an acceptable plan for eliminating the illegal segregation at this school.' The plan not only 'must eliminate racial and ethnic segregation' but 'should also provide a practical method of minimizing community conflicts and maximizing educational opportunities for the present and potential students of the school.' The court then said, in a passage critical to the controversy before us:
 
 
 6
 The parties will have until March 1, 1974 to submit such a detailed plan to be placed in operation by September, 1974.
 
 
 7
 The plan was to take account of the 'six basic elements in successful school integration' as listed by the Select Senate Committee on Equal Educational Opportunity, 92d Cong.2d Sess., Toward Equal Educational Opportunity 29-31 (Comm. Print 1972), of which early integration is only one. Various essential features were discussed in some detail. Housing officials of the city, state and federal governments were directed to provide a joint plan so designed that, in a phrase of the chancellor, the area would be 'refertilized with new families.' Police, transit and recreational officials were also directed to submit plans that would facilitate the desegregation. A hearing was set for March 5, 1974.
 
 
 8
 Hearings were held as scheduled and on April 1, 1974, Judge Weinstein filed a second opinion. He concluded that
 
 
 9
 Despite the cooperation of the parties and their counsel, it is apparent that a complete and integrated proposal covering education, housing and related matters has not yet been formulated.
 
 
 10
 He criticized the plans submitted by the plaintiffs, by the school board and by the chancellor. Plans submitted by other agencies were deemed inadequate, the judge saying he had received virtually nothing from the housing authorities. In light of all this, the judge wrote:
 
 
 11
 Testimony at the hearing made it clear that plans to deal comprehensively with conditions that have figured in the segregation of Mark Twain cannot be executed by September of 1974. Accordingly, the desegregation of Mark Twain is postponed to September 1975.
 
 
 12
 In order to avoid a repetition of the March 1974 experience, the judge appointed a highly qualified professor at the Law School of Columbia University as special master to work with the parties in the development of a suitable and comprehensive plan. The master was to deliver his final report no later than July 1, 1974 and a further hearing was set for July 15. After having unsuccessfully sought reconsideration of the one-year postponement of the desegregation date, plaintiffs appealed from that portion of the April 1, 1974 order and moved for a preference so that their appeal could be determined well before the beginning of the next school year. This having been denied by a single judge, plaintiffs moved for reconsideration.
 
 
 13
 The appealability of the direction for postponement cannot be considered in vacuo. Although the school board and its members and the acting superintendent of the district filed a protective notice of appeal from the decision of January 28, 1974,[3] they did nothing actively to prosecute the appeal, evidently believing that the decision was not appealable under Taylor v. Board of Education of New Rochelle, 288 F.2d 600 (2 Cir. 1961). We there held that when a district court has simply found segregation by a school board to be unconstitutional and has directed the board promptly to submit a plan for ending it, without any 'injunction' other than the direction to file the plan, the decision is not appealable at that time.[4] However, if we were to hold the postponement of the effective date of the desegregation to be appealable, we would feel compelled to allow defendants, cf. Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931), to contend not only that the postponement was proper but that desegregation should not have been ordered at all. We would thus be forced into consideration, on an expedited basis not necessitated by the district judge's own timetable, of a most serious constitutional question to which the district judge devoted months of thought, which the cooperative efforts of the judge, the master, and the parties, conceivably although perhaps optimistically, may make it unnecessary for us to decide at all, and which at least will be given concrete and integrated form by those efforts so that review 'in pieces' and in the 'abstract' can be avoided. See Taylor v. Board of Education of New Rochelle, supra, 288 F.2d at 605. Only a strong showing by appellants would lead us to hold that we are required to decide such a question now.
 
 
 14
 Instead, the rationale of Taylor necessarily results in a conclusion of unappealability here. Since the judge had neither entered a final judgment nor issued an injunction, there was no legally effective order which he could either modify or stay. When his decision of January 28, 1974 is read in context, it is plain that he had not, as appellants assert, directed desegregation by September 1974; he had simply directed that the plans to be submitted by March 1, 1974 should so provide. When he examined the plans, he became convinced that none of them was suitable for implementation. Appellants seek to make much of a statement by the judge on the reconsideration hearing that 'a plan can be drawn with all the details very promptly within a matter of weeks if I order it, and that that plan could be put into operation in September of 1974, moving children around and moving teachers around in that district.' But, as the quotation itself intimates, the judge was not and never had been prepared to make such an order since, in his view, a plan of that sort would not 'be an effective plan.'[5]
 
 
 15
 We do not disagree with appellants that there may be circumstances where failure to order a desegregation long overdue constitutes a denial of an injunction even though those formal words are not uttered. Appellants place great reliance on Kelley v. Metropolitan County Board of Education of Nashville, 436 F.2d 856 (6th Cir. 1970), but the differences are greater than the similarities. There, after he had rendered a devastating opinion strongly indicating the lines which a desegregation plan should take, and after the school board had submitted a plan in purported compliance, the district judge stayed indefinitely all proceedings and hearings concerning the proposed plan or possible alternatives pending the decision of certain school cases in the Supreme Court. Moreover, as said by the court of appeals, the case was 'growing hoary with age'-- one of the consolidated cases going back to 1955 and the other to 1960, 436 F.2d at 858. Here, in contrast, the district court is laboring earnestly on the development of a satisfactory plan; it hopes to finish its work within two years after suit was brought, and expects to implement the resulting plan just three years from the date of the complaint. No one could properly characterize this vigorous conduct as a de facto denial of an injunction. Adhering to Taylor, we hold that the action taken by Judge Weinstein on April 1, 1974 was not appealable and dismiss the appeal, thereby mooting the motion for a preference.
 
 
 16
 We add that if the order were in fact appealable, we would grant the city defendants' motion for summary affirmance. The judge's decision in this rapidly progressing northern desegregation case, where he has believed a plan of unprecedented scope to be required and is pressing hard for speedy formulation of such a plan, contrast Alexander v. Holmes County Board of Education, 396 U.S. 1218, 90 S.Ct. 14, 24 L.Ed.2d 41 (1969) (Black, Cir. J.); id., 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed. 19 (1969) (per curiam); Carter v. West Feliciana Parish School Board, 396 U.S. 226, 90 S.Ct. 467, 24 L.Ed.2d 382 (1969) (per curiam); id., 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970) (per curiam), was well within the wide discretion accorded to district courts in the framing of remedies. Cf. International Salt Co. v. United States, 322 U.S. 392, 400-401, 68 S.Ct. 12, 92 L.Ed. 20 (1947); Chance v. Board of Examiners, 458 F.2d 1167, 1178 (2 Cir. 1972); Vulcan Society v. Civil Service Comm'n, 490 F.2d 387, 399 (2 Cir. 1973); Coalition for Education in District One v. Board of Elections, 495 F.2d 1090, 1094 (2 Cir. 1974). This is true even though the judge's decision rested partly on his fears concerning 'the readiness of the community,' see note 5 supra, Keyes v. School District No. 1, Denver, Colorado, 396 U.S. 1215, 1217, 90 S.Ct. 12, 24 L.Ed.2d 37 (1969) (Brennan, Cir. J., vacating stay by court of appeals of preliminary injunction entered by district court).
 
 
 17
 The appeal is dismissed for lack of an appealable order. The motion for a preference is dismissed as having become moot.
 
 
 
 [1]
 In order to avoid any possible misunderstanding on a matter that has aroused much emotion, we wish to make it crystal clear that this opinion deals only with procedural problems and intimates no views whatever on the merits
 
 
 [2]
 As of this writing, the black child is no longer a student at Mark Twain
 
 
 [3]
 Appellants' counsel stated at argument that the district judge had 'voided' this notice. Examination of the transcript of the hearing of March 5, 1974 indicates that, despite some language along these lines, all that the judge really did was to assert, quite properly in our view, that since his decision of January 28 was not then appealable, the notice of appeal did not strip him of jurisdiction to continue his work on the remedy
 
 
 [4]
 After referring to the Taylor decision, 9 Moore, Federal Practice P110.20 (1) at 235 (Ward ed. 1973), says that 'the weight of authority would appear to be the other way.' The two cases cited for this statement do not bear it out. In Board of Public Instruction of Duval County, Florida v. Braxton, 326 F.2d 616, 619 (5 Cir.), cert. denied, 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216 (1964), Chief Judge Tuttle correctly distinguished Taylor on the basis that then District Judge Kaufman's initial decision in Taylor had not contained any words of restraint, whereas in Braxton the district court had actually enjoined the doing of certain acts and then merely deferred the effective date of the injunction while directing 'that a plan be submitted that would provide for carrying out the (injunctive) paragraphs that were to be later effectuated.' Id. In Board of Education of Oklahoma City v. Dowell, 375 F.2d 158 (10 Cir.), cert. denied, 387 U.S. 931, 87 S.Ct. 2054, 18 L.Ed.2d 993 (1967), after the board had filed two unsatisfactory plans, the court appointed a panel of experts to devise a new plan and ultimately ordered the board to submit a plan substantially identical with that recommended by the experts; this seems to have been simply a polite gesture, no different in substance from the court's directing the board to comply with the report of the experts as modified. The point of Taylor was that there had not yet been any plan which the court was prepared to order. Bradley v. Milliken, 468 F.2d 902 (6 Cir.), cert. denied, 409 U.S. 844, 93 S.Ct. 45, 34 L.Ed.2d 83 (1972), cited in the cumulative supplement of Moore for use in 1974, is in accord with Taylor, although arising in a somewhat different posture (order to submit desegregation plan issued after mere 'pretrial conference'). Compare Bradley v. Milliken, 484 F.2d 215 (6 Cir.), cert. granted, 414 U.S. 1038, 94 S.Ct. 538, 38 L.Ed.2d 329 (1973) (appeal granted under 28 U.S.C. 1292(b) from orders finding segregation and outlining extremely broad geographic ambit of type of plan to be sought, which orders were concededly 'interlocutory'). In any event Taylor is the law of this circuit and we have no disposition to modify it in cases where, as here, the judge's initial decision simply found liability and directed the defendants and others to assist the court in the expeditious framing of a decree
 
 
 [5]
 Elaborating on this, Judge Weinstein said:
 It is not only the question of buildings, it is the question of the readiness of the community, both parents and the children; it is the question of whether the children will go into institutions where they will be received properly and not with hostility; it is a question of whether the educational program will benefit all the children of all races and ethnic backgrounds, or whether we will have an order which will give the appearance of accomplishing something when it does not accomplish anything.