Joseph Mario SPATES et al.,
Plaintiffs-Appellees,

v.

John R. MANSON, Commissioner, Connecticut Department of Correction et al., Defendants-Appellants.

Harry J. MAYO, Plaintiff-Appellee,

v.

John R. MANSON, Commissioner, Connecticut Department of Correction et al., Defendants-Appellants.

No. 888, Docket 79–2267.

United States Court of Appeals,
Second Circuit.

Argued March 10, 1980.

Decided April 8, 1980.

Martha Stone, Hartford, Conn. (Connecticut Civil Liberties Union Foundation), for plaintiffs-appellees.

. Cornelius F. Tuohy, Asst. Atty. Gen., State of Conn., Hartford, Conn. (Carl R. Ajello, Atty. Gen., State of Conn., Hartford, Conn., of counsel), for defendants-appellants.

Before FRIENDLY and FEINBERG, Circuit Judges, and SIFTON, District Judge.*

FRIENDLY, Circuit Judge:

This action commenced on October 8, 1976, when Joseph Spates and two other inmates at the Connecticut Correctional Institution at Somers filed a *pro se* complaint in the United States District Court for the District of Connecticut, charging various state correctional officials with denying their right to a constitutionally adequate law library and legal assistance in the prison.[1] The complaint sought "injunctive and declaratory judgment against the defendants, ordering said defendants to submit a *policy statement* in accordance with recent United States Supreme Court decisions regarding adequate researching materials,

and functional legal assistance program(s)." (emphasis in original). After plaintiffs and defendants filed cross-motions for summary judgment, the district court appointed plaintiffs' present counsel to represent them. Counsel filed an amended complaint and motion for summary judgment. Shortly thereafter, another inmate at Somers, Harry Mayo, filed a *pro se* complaint also charging inadequacies in access to legal materials. This case was consolidated with the *Spates* action, and counsel in *Spates* was also appointed to represent Mayo.

The amended complaints in the consolidated cases articulated four causes of action, all alleging violations of plaintiffs' "right of access to the courts" guaranteed by the Fourteenth Amendment. The first cause charged the defendants with refusing "to provide and adequately maintain a comprehensive and up-to-date collection of state and federal reporters, statutes, digests, Shepard's and . . . other reference materials." The second cause alleged that the library hours and seating facilities were inadequate; the third that defendants refused to supply plaintiffs with sufficient stationery supplies and typewriting, photocopying, and notarial services. The final cause of action did not refer to the library, but rather charged the prison officials with failing "to provide any adequate legal staff or meaningful legal assistance to inmates . . . in habeas corpus, or civil rights actions."

The relief sought included declaratory judgment on all four counts, and an order requiring the defendants to improve the library collection by making specific purchases; open the library seven days a week for no less than forty hours a week; provide additional desks and seats in the library; supply prisoners with an unlimited amount of free legal paper, pens, pencils, and forms; make available fifteen typewriters and a photocopying machine; and increase notarial services. Plaintiffs also

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

1. The two other inmates were subsequently discharged from their sentences.

requested that the court develop a plan of furnishing legal assistance to prisoners in the form of a Prisoner Legal Services Program, legal training for inmates, and correctional librarians.

Information about the law library at Somers was provided in four affidavits filed by Paul Rosa, the prison librarian. The law library is located within the general library, and has tables and thirteen chairs. Six typewriters are available for inmate use, although Mayo avers that on "many occasions" he has been unable to a use a typewriter because of the many people waiting ahead of him. There is no photocopying machine. The library is open fifteen hours a week, and every other Tuesday it is open an additional two-and-one-half hours. It is closed on weekends and holidays, but inmates may check out a maximum of four volumes for use during such periods.

The amended complaints allege that the library lacked complete and up-to-date volumes in twenty-four different areas, ranging from Supreme Court reports and federal decisions to state law materials and assorted treatises. The library contains volumes from various publishers which, when combined, provide continuous coverage of decisions by the Supreme Court from 1800 to the present, although there is not a complete set from any one reporting service. When the complaint was filed there was a gap for the period 1966–1969, but according to one of Mr. Rosa's affidavits an order has been placed to fill this gap. In addition to the foregoing, volumes 326–420 of the United States reports are available on microfilm. The library has the paperbound edition of Federal Reporter second series, volumes 416-present, although there are large gaps in the coverage. For example, volumes 437–457 are listed as missing. The Federal Supplement, volumes 304-present, is also available in the paperbound edition, but again with gaps. The library receives new volumes of the Supreme Court Reporter, Federal Reporter second series and Federal Supplement as issued by the publisher. Volumes 10-present of the Criminal Law Reporter are also available although most of the volumes before volume 10 are missing.

The library contains a 1958 edition of the United States code, with only partial supplementation up to 1963. When the action commenced it contained several volumes of a 1961 edition of United States Code Annotated; more recently Mr. Rosa averred that the library has obtained a complete U.S. C.A. set with 1978 pocket parts.

The Connecticut Reports are on the shelves, but only portions of the Connecticut Supplement and Connecticut Circuit Court reports are available on microfilm. When the action was commenced there was one set of Connecticut General Statutes, with two missing volumes, and another complete set on microfilm. Subsequently, the library acquired three new sets. An incomplete set of West's Connecticut Statutes Annotated is available. The library contained Phillips' Connecticut Digest when the complaint was filed, and obtained West's Digest thereafter, with supplementation.

The Shepard's collection covers Supreme Court cases from 1943–1973 in hardbound volumes, with paper supplementation. Statutes are apparently also covered in paper supplements from 1973 to the present, and decisions of federal circuit and district courts have only scattered coverage beginning in 1973.

The library contains Corpus Juris Secundum, assorted law dictionaries, and various numbers of different law reviews. There are also miscellaneous treatises and casebooks, some highly relevant to typical inmate problems, such as Kadish & Paulsen, *Criminal Law and Its Processes*, and Carter, *Probation and Parole: Selected Readings*, while others, such as Stephens & Mann, *The Federal Estate & Gift Taxes*, and Amory & Hardee, *Materials on Accounting*, are of less obvious pertinence.

Mr. Rosa travels to the state library at Hartford every Monday at which time he will photocopy for inmates cases which are not available at Somers. The state allows twenty-one free pages of photocopying; this limit is allegedly not enforced as to

prisoners, and Mr. Rosa avers that no inmate has ever had to pay for photocopying. Both Mayo and Spates, however, have claimed delays in responses to their requests for photocopies of cases not available at Somers, delays which they claim have created difficulties for them in pending or contemplated cases.

Writing paper is available free to inmates, but Mayo complains that there is a five sheet per day limit. Free postage is provided for mail forwarded to judges and courts. Other supplies must be purchased at the commissary. Notarial services are available on Monday, Wednesday, and Friday.

Legal assistance is furnished prisoners at Somers under two separate programs. Three attorneys staff the Legal Assistance to Prisoners program. An attorney visits Somers once a week to meet with inmates who have arranged an interview, and approximately 15–20 interviews are conducted per week. According to an affidavit filed by the director, Legal Assistance to Prisoners will consider all legal claims except direct appeals from criminal convictions or the defense of pending prosecutions. It will accept all non-criminal cases unless they are likely to be fee-producing, in which case they will assist the inmate in contacting private counsel, or unless they consider the claim to be without merit, in which case they will try to explain the reasons to the prisoners.

The Connecticut Public Defender Service provides counsel for indigents in criminal prosecutions and appeals. See Conn.Gen. Stat. § 51–289–300. It will also handle state habeas corpus petitions if appointed by the Court.

Plaintiffs claim that there are significant gaps in this scheme of representation, gaps which mandate a more complete law library. Although counsel will automatically be appointed to represent the petitioner when a state habeas corpus petition is filed, the clerk will not file a petition "which fails to set forth necessary information or which appears to be frivolous." Such petitions are forwarded to the presiding judge who determines if they are to be filed or dismissed. Only after filing will an attorney be appointed. Legal Assistance to Prisoners will handle state habeas corpus claims, but the decision whether to do so in any particular case is within the discretion of the attorney. Appointment of counsel by the court in federal habeas corpus and federal civil rights cases is also discretionary. Finally, there is no assistance for prisoners wishing to proceed *pro se.*

After plaintiffs filed their amended complaints and amended motions for summary judgment, and the defendants filed cross-motions for summary judgment, the district court, M. Joseph Blumenfeld, *Judge*, referred the consolidated cases to F. Owen Eagan, magistrate. The magistrate filed a recommended ruling on the motions for summary judgment on December 9, 1978, and amended this on December 26. Focusing on *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and *Stover v. Carlson*, 408 F.Supp. 696 (D.Conn.1976), the magistrate felt "constrained to agree with the plaintiff that a comparison of the Somers facilities with those declared adequate in other decisions finds the Somers facility lacking." He listed fourteen volumes or sets of volumes which he considered "necessary".[2] On the other hand,

---

**2.** 1. A complete set of *Shepard's Federal Citations* and *Connecticut Citations* from 1960 to the present.
2. In addition to the three new sets of the *Connecticut General Statutes* (revised to 1977), a complete and updated set of *Connecticut General Statutes Annotated* is required to provide cross-referencing.
3. Connecticut Supplement (1969 to the present).
4. The existing bound volumes of the Connecticut Circuit Court Reports.

5. A complete set of *Shepard's United States Citations* (cases) 1943 to the present with continuous updating.
6. A complete set of either United States Supreme Court Reporter, Official Reports of the Supreme Court, or Lawyer's Edition (1950 to present). This court acknowledges that through the three publications the required years are presently covered. However, effective legal research is severely hampered when one has to cross-reference among three different compilations of cases.

the magistrate stated that "an adequate legal assistance program does exist at . . Somers," and declined to order any expansion.

In the concluding section of the amended recommended ruling, the magistrate stressed that implementation of the right of access to courts should be left in the first instance to the discretion of prison authorities. In light of this concern, he stated that "this court refrains from issuing a mandate to correctional administrators regarding specific compliance with this ruling." The defendants were ordered to submit a plan within 120 days which would indicate how they intended to comply with the court's decision. The plan was to detail:

a.) what changes in library access are to be made, and when they are to be made;

b.) what additions are to be made at the law library at Somers, and when they will be made. In addition this court wants assurance that the plan adopted will provide for continuous updating;

c.) what legal services by attorneys are to be provided at Somers; and

d.) what photocopying privileges will be extended to inmates both for volumes in the law library at Somers, and volumes in the state law library.

On January 4, 1979, the defendants filed a motion to reconsider the amended recommended ruling, alleging that it was contrary to the Supreme Court's decision in *Bounds v. Smith, supra.* *Bounds* mandated provision of an adequate law library *or* adequate assistance from persons trained in the law, defendants argued, and therefore the magistrate's ruling that an adequate legal assistance program did exist at Somers fully satisfied the requirements of *Bounds.* Plaintiffs Spates and Mayo also filed a motion to reconsider, on January 17, 1979, requesting clarification of the magistrate's ruling that an adequate legal assistance program existed. On September 21, 1979, Magistrate Eagan entered a recommended ruling on the motions to reconsider, granting plaintiffs' motion and denying that of defendants. The ruling that an adequate legal assistance program existed had to be understood in the context of the magistrate's effort to pinpoint the inadequacies which rendered the current system deficient as a whole. "Our statement should not be read to imply that the current system of legal assistance could, in and of itself, provide inmates with adequate access to the courts under *Bounds.*" Defendants were given sixty days within which to submit the plan.

On September 28, 1979, the defendants objected to the magistrate's recommended rulings. On October 30, Judge Blumenfeld accepted the rulings and summary judgment was entered in favor of plaintiffs on November 27 "in accordance with the Court's Memoranda of Decision." Defendants filed a notice of appeal on December 12. They moved for a one week enlargement of the time in which to submit the plan on January 23, 1980, shortly before the plan was due. This motion was granted. On February 4 defendants moved in the district court for a stay pending appeal, which was also granted.

■ Although neither of the parties had raised the point, our study of the record and briefs revealed a serious question whether the "judgment" of November 27, 1979 did anything more than direct the defendants to submit a plan for improved legal assistance to prisoners at Somers and thus was unappealable under the principle which we announced in *Taylor v. Board of Education,*

7. Federal Reporter 2d (West) (1960 to the present).

8. Federal Supplement (West) (1960 to the present).

9. A complete and up to date set of *United States Code Annotated* (West) Title 18 (including the Rules volumes—total of fifteen (15) volumes).

10. *United States Code Annotated* (West) Title 28—Rules of Appellate Procedure.

11. Two copies of Title 28 U.S.C.A. § 2253 and Title 42 U.S.C.A. §§ 1891–1984.

12. Criminal Law Reporter (Bureau of National Affairs) (complete set).

13. A copy of Palmer, *Constitutional Rights of Prisoners* should be available to inmates. It is missing at this time.

14. Sokil, *Federal Habeas Corpus* (Michie). (Appendix 12–13).

288 F.2d 600 (1961), and adhered to in *Hart v. Community School Board*, 497 F.2d 1027 (1974). Accordingly we asked counsel to be prepared to discuss this at argument. Appellants contended that the judgment was appealable [3] whereas appellees urged that it was not. We agree with appellees.

In *Taylor* we considered the appealability of a decree which ordered the submission of a plan for desegregation of a school district. We held that such an order was not appealable as a "final decision" under 28 U.S.C. § 1291, nor was it appealable as an interlocutory order granting an injunction under 28 U.S.C. § 1292(a). There is no need to repeat the reasoning that led us to these conclusions in *Taylor*; the question is rather of the applicability of that decision. *Taylor* and subsequent opinions on the subject have recognized two situations in which the normally non-appealable order to submit a plan may be appealable: when the order contains other injunctive relief, or when the content of the plan to be submitted has already been substantially prescribed by the district court.

■ We recognized in *Taylor* that if the court had prohibited the defendant from engaging in certain practices, although also ordering the submission of a detailed plan of compliance, the order would be appealable under 28 U.S.C. § 1292(a), 288 F.2d at 603. Orders were held appealable on this basis in *Arthur v. Nyquist*, 547 F.2d 7 (2 Cir. 1976) (enjoining further violations of constitutional rights and ordering submission of a plan) and *Resident Advisory Board v. Rizzo*, 564 F.2d 126 (3 Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 1458, 55 L.Ed.2d 499 (1978) (ordering construction of housing project, enjoining any interference

with such construction, and ordering submission of a plan for racial composition of the project).[4] This is not to say that the mere fact that an order contains an appealable portion will necessarily render a separate portion requiring the submission of a plan also appealable. The appealable portion may be sufficiently distinct from the subject matter of the plan so that it can, and should, be considered separately. See, e. g., *Frederick L. v. Thomas*, 557 F.2d 373 (3 Cir. 1977), discussed *infra*.

The second situation in which an order to submit a plan may be appealable has been most fully elaborated in two illuminating opinions of the Third Circuit. In *Frederick L. v. Thomas*, 557 F.2d 373 (3 Cir. 1977), Judge Adams considered an order which required the defendants to submit a plan for the identification of all learning disabled children and to submit plans for the appropriate education of all such children. He found that the first part of the order was appealable under 28 U.S.C. § 1292(a)(1), while the second part was not. As for the first part, *Taylor* was distinguished on grounds which merit quotation:

> In *Taylor* the exact desegregation plans offered by the school board and ultimately to be adopted by the school district had the potential to alter in a material manner the issues that would be presented to the court of appeals. The determination that desegregation was necessary and that a remedial plan must be submitted provided only a skeletal outline for later adjudication. *Id.* at 380–81.

In *Frederick L.*, however, the extent of the relief in the first part of the order was clear, and only implementation was subject to a submitted plan: "The precise plan ulti-

---

3. It is clear that nothing turns on the use of the word "judgment" or the statement that "summary judgment be and is hereby entered in favor of the Plaintiffs in accordance with the Court's Memoranda of Decision." In *Taylor* the district court had styled its action as a "decree". Appealability turns on what has been ordered, not on how it has been described.

4. In *Board of Public Instruction of Duval County v. Braxton*, 326 F.2d 616, *cert. denied*, 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216 (1964),

a divided panel of the Fifth Circuit applied this qualification to support appealability in a case where the district court enjoined certain practices but deferred the effective date of the injunction until further order of the court. While *Braxton* is distinguishable from *Taylor* on this basis, as we explained in *Hart v. Community School Board*, *supra*, 497 F.2d at 1030–31 n. 4, we take no position whether we would agree with the majority or the dissent, 326 F.2d at 621.

mately adopted will determine *how* identification is accomplished, but the nature of the plan cannot affect the extent to which identification is done." *Id.* at 381 (emphasis in original). As to the second part of the order, however, "[t]he scope and content of the educational plan that the district court approves may very well alter our perspective and could change the legal issues that are presented." *Id.* at n. 49. This decision was followed by *Hoots v. Commonwealth*, 587 F.2d 1340 (3 Cir. 1978), where the court concluded that appeal would lie from orders requiring the submission of plans when the orders "specified the overall content or outline of the plan to be submitted," but not when the orders "did not specify the nature or extent of the relief which the plans would afford." *Id.* at 1349. Judge Garth viewed the order to submit a plan in *Hoots* as "merely a step in a judicial proceeding leading to the formulation of . . . relief," *id.* at 1351, since the guidelines provided by the district court order were mere generalities. Contrast *Board of Education v. Dowell*, 375 F.2d 158 (10 Cir.), *cert. denied*, 387 U.S. 931, 87 S.Ct. 2054, 18 L.Ed.2d 993 (1967) (order requiring defendants to submit a plan substantially identical to one previously prepared by panel of experts considered on appeal).[5]

■ There is no claim that the order here sought to be appealed comes within the first qualification of *Taylor*. The order neither prohibited nor required anything other than the submission of a plan. As to the second qualification, the order "did not specify the nature or extent of the relief which the plans would afford." The magistrate was endeavoring to effectuate the ruling in *Bounds v. Smith, supra*, that state prisoners are entitled to legal assistance needed to enable them effectively to assert certain legal rights in the court. The *Bounds* Court was at pains to recognize, 430 U.S. at 830–32, 97 S.Ct. at 1499, that adequate law libraries were only "one constitutionally acceptable method to assure meaningful access to the courts", that other programs "may have a number of advantages over libraries alone," and that any plan "must be evaluated as a whole to ascertain its compliance with constitutional standards." Connecticut thus could choose to correct what the magistrate found to be deficiencies in the coverage of its legal assistance programs rather than augment the Somers law library, or to do some of both. See *United States v. Blue Thunder*, 604 F.2d 550, 556–57 (8 Cir.), *cert. denied*, 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979); *Stover v. Carlson, supra*, 408 F.Supp. at 698.

The lack of any intention by the magistrate to bind the State to any particular form of compliance in its plan is evident. The Amended Recommended Ruling on Plaintiff's Motion for Summary Judgment and Defendants' Cross-motion for Summary Judgment concluded by stressing that implementation of the right to adequate access to legal facilities rests with prison administrators. "Therefore, in granting plaintiff's motion for summary judgment, this court refrains from issuing a mandate to correctional administrators regarding specific compliance with this ruling." Although in one part of the opinion the magistrate listed 14 books or sets of books which he felt were "necessary", he also indicated that even these items were not strictly necessary, asking that the plan specify which books would be added to the library. He described his opinion as one which merely "made specific recommendations as to how these deficiencies might be corrected."

Indeed appellants do not assert that they are now under any injunction granting substantive relief or directing them to submit any particular plan. They seize rather on a passage in the *Taylor* opinion where, in answering the objection that failure to en-

---

**5.** It has been suggested that the order in *Braxton* was appealable under the second qualification of *Taylor*, since by specifically listing five prohibited activities, which prohibitions the plan was to implement, the order specified the content of the plan. See *Hoots, supra*, 587 F.2d at 1349. In view of the generality of the prohibitions, however, see 326 F.2d at 617 n. 1, we doubt whether there was sufficient specificity to have rendered the order appealable on that basis.

tertain the appeal would cause delay, we said:

> Although we do not regard the policy question as to the timing of appellate review to be fairly open, we think more informed consideration would show that the balance of advantage lies in withholding such review until the proceedings in the District Court are completed. To stay the hearing in regard to the remedy, as appellants seek, would produce a delay that would be unfortunate unless we should find complete absence of basis for any relief . . . 288 F.2d at 605.

Appellants assert that this case falls within the "unless" clause since this is not a class action and the two appellants whose cases remain viable have not shown any violation of *their* constitutional rights. The argument ignores that the quoted statement was in a portion of the opinion where we sought to show that the conclusion of non-appealability, which we had reached as a matter of law, also represented good policy on balance even though it would result in delay in a case in which the appellate court eventually found no basis for relief. See generally *The Remedial Process in Institutional Reform Litigation*, 78 Col.L.Rev. 784, 851–53 (1978) (discussing the problem of delay to appellees if such orders were considered appealable). Our policy analysis was proffered "not primarily as the reason for our decision not to hear an appeal at this stage, but rather to demonstrate what we consider the wisdom embodied in the statutes limiting our jurisdiction, which we would be bound to apply whether we considered them wise or not." 288 F.2d at 605–06. We therefore need not now consider whether this is a case where there is a complete absence of basis for any relief.

The appeal is dismissed for lack of appellate jurisdiction. We trust that the district court will now vacate the stay and give prompt consideration to the plan, so that an appealable order may be entered. No costs.

