**George ARTHUR et al.,**
**Plaintiffs–Appellants,**

v.

**Ewald P. NYQUIST et al.,**
**Defendants–Appellees,**

and

**Community Advisory Board for Bilingual Education of Buffalo, etc., et al.,**
**Intervenors–Appellees.**

**Nos. 427–8, Dockets 80–7582, 80–7682.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1980.

Decided Jan. 5, 1981.

Richard F. Griffin, Buffalo, N. Y. (Thomas I. Atkins, Gen. Counsel, NAACP, New York, New York, David G. Jay, Buffalo, N.Y., of counsel), for plaintiffs–appellants.

Aubrey V. McCutcheon, Jr., Detroit, Mich. (William E. Carey, Asst. Corp. Counsel, Joseph P. McNamara, Corp. Counsel, Buffalo, N.Y., of counsel), for defendants-appellees.

J. Edmund De Castro Jr., Buffalo, N.Y. (Community Advisory Board for Bilingual Education of Buffalo, et al., James A. W. McLeod, Buffalo, N.Y., Concerned Citizens for Education, of counsel), for intervenors-appellees.

Before LUMBARD, MULLIGAN and VAN GRAAFEILAND, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from orders of the Western District of New York, Chief Judge John T. Curtin, approving a plan submitted by the appellee-Board of Education (Board) for the desegregation of Buffalo's public school system which was found to have been intentionally segregated in *Arthur v. Nyquist*, 415 F.Supp. 904 (W.D.N.Y.1976), aff'd in part, rev'd and remanded in part, 573 F.2d 134 (2d Cir.1978). The appellants assert that the Board's plan, known as "Phase III," is an incomplete and ineffective remedy for past discrimination and unconstitutionally places an undue burden on minority students to accomplish school desegregation. The Board responds that its plan, which relies to a great extent on voluntary transfers and school closings, will achieve as much integration as is practicable in light of the various circumstances besetting the city and school district. The Board also categorically denies that its plan places an unequal burden on minorities. Although too many years have elapsed since this litigation commenced, this court is unable on the record before us to review the district court's approval of Phase III and therefore the case is remanded for further factual development by the district court.

■ It is apparent that even as this appeal was taken, the time schedule for implementing Phase III and the "final deadline" for achieving system-wide desegregation were not agreed upon by the parties and had not yet been submitted by the Board to the district court. The proposed schedule was eventually submitted to the district court a week before oral argument of this appeal and thus, we have had neither notice of the contents of the proposal nor the benefit of the district court's consideration of this issue. The timeliness of the remedy for intentional school segregation is certainly a major source of contention between the appellants and the Board and is of the utmost constitutional importance. *Green v. County School Board*, 391 U.S. 430, 439, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968). Without initial resolution of this matter by the district court, it is premature for this court to determine whether the school board has discharged its burden of coming forth with an acceptable plan "that promises meaningful and immediate progress toward dis-establishing state-imposed segregation." *Green v. County School Board, supra*, 391 U.S. at 439, 88 S.Ct. at 1694; *see Alexander v. Board of Education*, 396 U.S. 1218, 1222, 90 S.Ct. 14, 16, 24 L.Ed.2d 41 (1969).

■ In addition, the district court orders appealed from provide a paucity of detailed factual findings to support approval of the Board's plan, leaving this court with a myriad of inconclusive maps and statistics offered by both parties in aid of their conflicting positions. The district courts have been vested with discretion to use "broad and flexible equitable powers to implement a remedy that [is both] sensitive to the burdens that can result from a decree and the practical limitations involved . . . ." *United States v. DeSoto Parish School Board*, 574 F.2d 804, 811 (5th Cir.), cert. denied, 439 U.S. 982, 99 S.Ct. 571, 58 L.Ed.2d 653 (1978). In recognition of this active role of the district court judge in devising and monitoring Buffalo's school desegregation plans we hesitate to scrutinize data before the district judge affords the appellate court with specific conclusions to review. For example, although Chief Judge Curtin stated that "the Board has taken substantial steps to provide an ever-increasing number of children with an opportunity for an integrated education," September Term 1980–

81 school enrollment statistics filed with this court just prior to oral argument, show that many segregated schools still remain. We have no findings from the district court with regard to this data.

Furthermore, there are no findings in the most recent orders regarding the shortcomings of Buffalo's second school desegregation plan that were identified by Chief Judge Curtin when he disapproved that plan and ordered further development of a system-wide remedy. *Arthur v. Nyquist*, 473 F.Supp. 830 (W.D.N.Y.1979). The deficiencies of the earlier plan included, among others, retention of many one-race schools, structural and administrative inefficiency of the Quality Integrated Education (QIE) program, unduly complex transportation system, and the placement of a disproportionate burden of desegregation on inner-city minorities. Whether these problems have been sufficiently ameliorated is not expressly addressed in the orders that form the basis of this appeal and the findings of fact and conclusions of law required by Fed.R.Civ.Proc. 52(a) are absent. Although Chief Judge Curtin admitted that hearings on many of these issues were not completed and that certain matters require additional attention by the Board,[1] it is difficult to discern the evidence upon which he based approval of the Phase III plan. Therefore, the case is remanded for specific findings as to the adequacy of Phase III as a remedy for dismantling Buffalo's dual school system, see *Swann v. Board of Education*, 402 U.S. 1, 31, 91 S.Ct. 1267, 1283, 28 L.Ed.2d 554 (1971), specification of additional remedies to be employed, and for careful and detailed analysis to determine whether Phase III impermissibly burdens minority parents and children with the responsibilities and inconveniences of achieving desegregation. *See Monroe v. Board of Commissioners*, 391 U.S. 450, 458, 88 S.Ct. 1700, 1704, 20 L.Ed.2d 733 (1968); *Green v. Coun-*

*ty School Board, supra,* 391 U.S. 441–42, 88 S.Ct. 1689, 1696, 20 L.Ed.2d 716; *NAACP v. Lansing Board of Education*, 559 F.2d 1042, 1052 (6th Cir.), cert. denied, 434 U.S. 997, 98 S.Ct. 635, 54 L.Ed.2d 491 (1977).

On the record presented, we cannot determine whether the Board has demonstrated that Phase III represents the maximum desegregation practically achievable. Until that finding is made by the district court, jurisdiction is retained. Furthermore, since "the most exacting form of review" is required when a plan may disproportionately burden the minority group which was the target of intentional discrimination, *Parent Association of Andrew Jackson High School v. Ambach*, 598 F.2d 705, 717 (2d Cir.1979), more comprehensive findings must be made on this issue.

Remanded.

---

1. The District Court reserved decision on the following issues: Hispanic-intervenors' plans for bi-lingual education; appointment of a "monitor" to oversee progress of desegregation; proposals for four all-minority schools which the Board concedes are "indeterminates" for

future desegregation. In addition, no reference has been made to faculty assignments which had previously reflected "intentional segregation by the school board." *Arthur v. Nyquist*, 573 F.2d 134, 144 (2d Cir.1978).