**Thomas Neil HENDRICKSON, Jr., Individually and on behalf of all others similarly situated, Bertha Foy and Sessions Harper, Appellees,**

v.

**Charles GRIGGS, Individually and as Sheriff Webster County, Leonard Hansch, Chairman; Elmer Pliner, Joseph Cunningham, Jill Messerly and Myron Groat, Individually and as members of the Webster County Board of Supervisors; and Webster County, Terry E. Branstad, Individually and as Governor of Iowa and Richard R. Ramsey, Individually and as Executive Director of the Iowa Criminal and Juvenile Justice Planning Agency, Appellants.**

No. 87–1860.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1988.

Decided Sept. 1, 1988.

Charles K. Phillips, Asst. Atty. Gen., Des Moines, Iowa, for appellants.

Harry F. Swanger, St. Louis, Mo., for appellees.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and BENSON,[*] Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

The issue in this case is whether a district court[1] order directing Iowa state officials to submit a plan for achieving compliance with the Juvenile Justice and Delinquency Prevention Act[2] is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1) (1982). The order is directed to Iowa governor Terry E. Branstad and Jack Crandall, executive director of Iowa's Criminal and Juvenile Justice Planning Agency. The officials argue that the order is appealable because it removed from the state the option of forfeiting federal funding under the Act and had the effect of directly ordering compliance. We reject these arguments and dismiss the appeal.

As we do not reach the merits of the case, a brief outline of the litigation is sufficient. Under the Juvenile Justice Act, state and local governments may receive grants for programs relating to juvenile delinquency and the juvenile justice system. 42 U.S.C. § 5631. Participating states must submit plans meeting specified requirements for carrying out the purposes of the Act and annual performance reports describing their compliance. 42 U.S.C. § 5633(a). These requirements include several provisions relating to the detention and jailing of juveniles. *See, e.g.,* 42 U.S.C. § 5633(a)(12), (13). In particular, state plans must "provide that, beginning after the five-year period following December 8, 1980, no juvenile shall be detained or confined in any jail or lockup for adults." 42 U.S.C. § 5633(a)(14). Failure to achieve compliance with this requirement terminates the State's eligibility for funding, unless the State has substantially complied by removing at least 75% of juveniles from jails and lockups for adults and has made "an unequivocal commitment," through executive or legislative action, to achieve full compliance within three years. 42 U.S.C. § 5633(c).

The State of Iowa has participated in this program, having submitted a plan and annual performance reports, and has received federal grants for a variety of programs relating to juvenile delinquency and its juvenile justice system.

On February 2, 1984, the plaintiffs commenced this action, alleging violations of due process, the eighth amendment prohibition against cruel and unusual punishment, statutory rights under the Juvenile Justice Act, and state and federal contract law arising from juvenile detention and jailing practices in Webster County, Iowa. The plaintiffs, including Thomas Neil Hendrickson, Jr., have been certified as a class under Fed.R.Civ.P. 23, and include "[a]ll Webster County juveniles or juveniles coming into custody in Webster County who are ordered by a Judge under [Iowa law] to be placed and held in the juvenile section of the Webster County jail." Appendix at 140. The class seeks a declaratory judgment and injunction, compensatory and punitive damages, and other relief. Named as defendants are Branstad and Richard R. Ramsey, Crandall's predecessor as director of the state's juvenile justice agency,[3] together with the sheriff and board of supervisors of Webster County.

The parties filed cross-motions for summary judgment, and the county also sought dismissal of the action under Fed.R.Civ.P. 12(b)(6) and (7). The class requested a temporary restraining order enjoining the state and county from confining "any members of the plaintiff class in any Iowa adult jail or municipal lockups * * *," and additional relief. Appendix at 191–92.

In a lengthy order entered on April 9, 1987, the district court first rejected a ser-

---

[*] The HONORABLE PAUL BENSON, Senior United States District Judge for the District of North Dakota.

1. The Honorable Donald E. O'Brien, Chief United States District Judge for the Northern District of Iowa.

2. 42 U.S.C. §§ 5601–5672 (1982 & Supp. III 1985).

3. Crandall has replaced Ramsey under the automatic-substitution rule of Fed.R.Civ.P. 25(d)(1) with respect to the class's claims against Ramsey in his official capacity.

ies of procedural objections offered by the county and state.[4] *Hendrickson v. Griggs,* 672 F.Supp. 1126, 1131–33 (N.D.Iowa 1987). The court then ruled that the class had stated a claim under 42 U.S.C. § 1983 (1982) for enforcement of rights created by the Juvenile Justice Act, particularly 42 U.S.C. § 5633(a)(12)–(14). *Hendrickson,* 672 F.Supp. at 1133–37. Because the motion for a restraining order was considered at a hearing at which all defendants were represented, the court treated the motion as one for a preliminary injunction, *id.* at 1129, and no one has contested this ruling on appeal. The court then applied the four-part test set forth in *Dataphase Sys. v. C L Sys.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc), and determined that the class was entitled to a preliminary injunction restraining the county and state from violating section 5633(a)(14). *Hendrickson,* 672 F.Supp. at 1137–41.

In tailoring the remedy, however, the court was concerned that an injunction requiring complete and immediate compliance with section 5633(a)(14) would be unworkable or require excessive intrusion into the state's administration of its juvenile justice system. *Id.* at 1143. The court therefore entered an order which stated:

> The state will be permitted to submit a plan for achieving a combination of policy changes and reductions in the rate of juvenile jailing which would place the state in compliance with the [Juvenile Justice Act] by the end of this year. The choice of whether to achieve substantial compliance, compliance with de minimis exceptions, or total compliance will be up to the state. Any particular decision to place a juvenile in jail will not constitute contempt and will not cause the Court to intervene. It will be the primary responsibility of the state defendants and not

the Court to reduce juvenile jailings to a legal rate. However, a failure to do so will constitute contempt, and in this respect, the plan the state submits must be fundamentally different from the plans it has submitted to the [Office of Juvenile Justice and Delinquency Prevention]. The plan should be submitted by April 30, 1987.

*Id.* at 1144 (footnote omitted). The court denied the motions of the county and state for dismissal and summary judgment to the extent that these motions involved the rulings set forth above. *Id.*

On May 4, 1987, the state filed its plan for reducing the rate of juvenile confinement in adult facilities, and supplemented the plan on May 21 to include reference to newly-enacted Iowa legislation regarding juvenile detention. *See* Iowa Code Ann. §§ 232.8, 232.22, 232.44, 805.1, 903.1 (West Supp.1988). Shortly thereafter, the district court granted Branstad and Crandall leave to file a notice of appeal under Fed.R.App. P. 4(a)(5), and due to this appeal the district court has not yet considered the state's proposed plan.

Branstad and Crandall argue that the district court erred in ruling that the class has a cause of action under section 1983; that the federal Office of Juvenile Justice and Delinquency Prevention has primary jurisdiction to enforce the Juvenile Justice Act; and that federal action in this matter is generally precluded by the tenth and eleventh amendments. They argue that the district court's order requiring submission of a plan is appealable because it is equivalent to a substantive order requiring the state to comply with section 5633(a)(14).

28 U.S.C. § 1292(a)(1) authorizes appeals from "[i]nterlocutory orders of the district courts * * * granting, continuing, modifying, refusing or dissolving injunctions

---

**4.** In their motions for summary judgment, the county and state argued that the class's claims were barred by res judicata and collateral estoppel; that the class had not exhausted it administrative remedies; that the federal Office of Juvenile Justice and Delinquency Prevention, which administers the Juvenile Justice Act, had pri-

mary jurisdiction over the class's statutory claims; that the class's statutory claim under 42 U.S.C. § 5633(a)(14) was not ripe for adjudication; that the class was required to proceed through a court-appointed guardian ad litem under Fed.R.Civ.P. 17; and that the class had

* * *."[5] "Because section 1292(a)(1) represents a departure from the general federal policy against piecemeal review, it must be construed strictly." *Surgidev Corp. v. Eye Technology, Inc.,* 828 F.2d 452, 457 (8th Cir.1987). In particular, "[a] district court order requiring submission of a plan, without more, is not appealable." *Liddell v. Board of Educ.,* 693 F.2d 721, 723 (8th Cir.1981). *See also Sherpell v. Humnoke School Dist.,* 814 F.2d 538, 539 (8th Cir. 1987). This general rule of nonappealability applies to district court orders requiring only the submission of a plan for the reform of jail or prison conditions. *See, e.g., Groseclose v. Dutton,* 788 F.2d 356, 359–61 (6th Cir.1986); *Spates v. Manson,* 619 F.2d 204, 208–11 (2d Cir.1980).

To obtain review of such an order, an appellant must demonstrate that it contains additional, properly appealable injunctive relief which cannot be considered apart from the order to submit a plan, *e.g., Spates,* 619 F.2d at 209, or that the order " 'specifie[s] the overall content or outline of the plan to be submitted,' " *id.* at 210 (quoting *Hoots v. Pennsylvania,* 587 F.2d 1340, 1349 (3d Cir.1978)), by binding the state to a "particular form of compliance." *Id.* In the former case, it is not enough if the order simply commands the state "to make a start, largely planning," toward compliance. *Sherpell,* 814 F.2d at 540. Nor does appellate jurisdiction exist if the district court "specifie[s] to a limited extent the content of the plan to be submitted." *Id.* at 539 (citing *Liddell,* 693 F.2d at 723 n. 4). Rather, the order must either grant a portion of the relief sought in connection with the plan, *see Spates,* 619 F.2d at 209, or "specify the nature or extent of the relief which the plan[ ] would afford." *Id.* at 210 (quoting *Hoots,* 587 F.2d at 1349).

We are satisfied that the district court's order in this case does not fall within either exception to the general rule of nonappealability. With regard to the first exception, for orders containing other injunctive relief, the most important aspect of the dis-trict court's order is its statement that "[a]ny particular decision to place a juvenile in jail will not constitute contempt and will not cause the Court to intervene." *Hendrickson,* 672 F.Supp. at 1144. The district court has stayed its hand with respect to the class's request for injunctive relief until it has had an opportunity to consider the state's plan and enter a specific remedial order. The court has not yet done so, nor has it directed the state to take any action beyond the submission of a plan.

Branstad and Crandall argue, however, that circumstances surrounding the district court's decision and its timing gave it the effect of an injunctive order. They claim that they were required to seek legislation and take other action to achieve compliance immediately, due to the impending close of Iowa's 1987 legislative session and the requirement in the order that the plan provide for compliance by the end of 1987. *See id.* They also claim that the order removed from the state the option of simply terminating its participation in the program and forfeiting any further federal grants.

We reject these arguments. While the district court stated that new legislation may have been the state's "most direct solution," it examined Iowa law and determined that "this is only one of several ways to meet the state's federal obligations." *Hendrickson,* 672 F.Supp. at 1142 (citing Iowa Code Ann. § 356.36 (West Supp.1988) (authorizing Iowa department of corrections to "draw up minimum standards for the regulation of jails * * * and municipal holding facilities")). *See also id.* at 1144 n. 28. We give great deference to the views of an experienced district judge on complex questions of state law, *e.g., Goellner v. Butler,* 836 F.2d 426, 433 (8th Cir.1988), and we cannot say the district court erred in this respect. Its order did not expressly require Branstad or Crandall to seek new legislation.

---

failed to name an indispensible party as a defendant.

5. No one contends that the order of the district court is a final decision under 28 U.S.C. § 1291 (1982).

Further, Branstad and Crandall have not specified what additional action they have taken to achieve compliance, nor was any evidence presented to the district court. Thus, we cannot review the factual aspect of this claim. While the district court in its order required that the *plan* be designed to achieve compliance by the end of 1987, it did not impose a final deadline on the state and, indeed, the district court can only address this issue after it has had an opportunity to consider the state's proposal. Certainly any compulsion resulting from the order itself is within the scope of a permissible command "to make a start, largely planning, toward [compliance]." *Sherpell*, 814 F.2d at 540.[6]

Finally, we do not read the district court's order as precluding the state from withdrawing from the federal grant program. The court's ruling that the class had stated a cause of action under section 1983 was explicitly based on the theory "that by receiving funds, the state has assumed responsibility for seeing that the eligibility conditions would occur." *Hendrickson*, 672 F.Supp. at 1135; *see generally id.* at 1134–36. The court observed that two bills which would have banned the placement of juveniles in adult jails in every state, without regard to the receipt of federal funds, failed of passage. *See id.* at 1137 (discussing S. 520 and S. 522, 98th Cong., 1st Sess. (1983)). In addition, the court has not yet passed upon the class's constitutional claims. Thus, the district court's order is based solely on duties the state has accepted through its continued participation in the grant program.[7]

We conclude that the district court's order does not contain injunctive relief apart from the requirement that the state submit a plan and is not appealable on this basis.

We turn now to the second exception, for orders which "specify the nature or extent of the relief which the plan[ ] would afford." *Spates*, 619 F.2d at 210 (quoting *Hoots*, 587 F.2d at 1349). The district court allowed the state to decide what level of compliance with section 5633(a)(14) it would achieve. *Hendrickson*, 672 F.Supp. at 1144. As we have said, the state also had power to terminate its participation in the grant program. The court did not specify a method for achieving compliance, and stated that "[i]t will be the primary responsibility of the state * * * and not the Court to reduce juvenile jailings to a legal rate." *Id.* While the court's order incorporated the general funding conditions of the Juvenile Justice Act, this minimal guidance simply "ensure[s] that a plan comporting with the law will be developed," *Sherpell*, 814 F.2d at 540, and is not a basis for appeal. *See id.* The order does not specify the content of the state's plan to the extent necessary for the exercise of appellate jurisdiction. *Cf. Morales v. Turman*, 535 F.2d 864, 867–69 & n. 6 (5th Cir.1976) (parties ordered to "arrange the details of implementing" a specific and comprehensive district court order regarding conditions of juvenile detention, and to submit an appropriate plan), *rev'd on other grounds*, 430 U.S. 322, 97 S.Ct. 1189, 51 L.Ed.2d 368, *reh'g denied*, 430 U.S. 988, 97 S.Ct. 1690, 52 L.Ed.2d 384 (1977).

The appeal is dismissed without prejudice for lack of jurisdiction.

---

**6.** In *Sherpell*, we dealt with an order which itself directed a school district involved in desegregation litigation " 'to initiate promptly an affirmative program designed to eliminate the racial atmosphere' " in its schools. 814 F.2d at 540 (quoting *Sherpell v. Humnoke School Dist.*, 619 F.Supp. 670, 681 (E.D.Ark.1985)). We held that this command, when read in the context of the entire order, was not an appealable injunction, and we observed that allowing review of only this portion of the order would be contrary to the federal policy against piecemeal appeals. *Id.* Our statements in *Sherpell* are directly applicable to the case before us.

**7.** Needless to say, these remarks apply only to the class's statutory claim for injunctive relief, which is the only issue before us, and not to its request for damages for past injuries.